IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMERICAN CIVIL RIGHTS UNION,<br>in its individual and corporate capacities,<br><br>*Plaintiff*,<br><br>v.<br><br>PHILADELPHIA CITY<br>COMMISSIONERS,<br>*Defendants*. | Civil Action No. 2:16-cv-01507 |

## RESPONSE IN OPPOSTION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff American Civil Rights Union ("ACRU"), by and through counsel, files this Response in Opposition to Defendants' Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 12(b)(7), and Memorandum of Law in Support. (Dkt. 5 (hereinafter "Motion").) Plaintiff opposes Defendants' Motion.

### SUMMARY OF THE ARGUMENT

This is an action brought under the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20501, *et seq.*, to enforce obligations of election officials to allow for public inspection and examination of all voter registration and election records.[1] Plaintiff ACRU is a non-profit corporation that "promotes election integrity, compliance with federal election laws, government transparency and constitutional government." (Complaint, Dkt. 1, ¶ 4.) On April 4, 2016, ACRU filed the present suit against Defendants, the Philadelphia City Commissioners, seeking a declaration that Defendants violated Section 8 of the NVRA and ordering Defendants

---

[1] The public record rights at issue in this case under 52 U.S.C. § 20507, along with voter registration list maintenance responsibilities, are commonly referred to as "Section 8" obligations under the NVRA as they were contained in Section 8 of Pub. L. 103-31, May 20, 1993, 107 Stat. 77.

to provide and permit inspection of the requested records as required by federal law. (Complaint, Prayer for Relief.)

Defendants responded to ACRU's allegations by filing a Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7). In support of their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1), Defendants claim that this Court lacks "subject matter jurisdiction because there is no live case or controversy between the parties." (Motion at 7.) Specifically, they allege that "[t]he City has never denied the Plaintiff access to the records covered by the NVRA." (Motion at 8.) In support of their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, 12(b)(7), Defendants claim that ACRU's Complaint should "be dismissed because the NVRA only obligates the Commonwealth, not the City, to make records available for public inspection." (Motion at 10.)

Defendants' Motion fails on both accounts. First, Defendants failed to respond to ACRU's notice letter until weeks after the Complaint was filed. And, even then, Defendants did not provide all of the requested documents *or* permit inspection of records as required by the NVRA. Second, Defendants' arguments that ACRU's Complaint should be dismissed pursuant to 12(b)(6) are predicated on their attempt to disavow their responsibilities under federal and Pennsylvania law, responsibilities the ACRU delineated in its Complaint. (Complaint ¶ 5.) Other federal courts recently confronted, and rejected, identical arguments from election officials facing complaints by the very same Plaintiff before this Court. *See ACRU v. Tax Assessor-Collector Cindy Martinez-Rivera*, No. 2:14-cv-00026 (W.D. Tex. 2014) and *ACRU v. Montalvo*, No. 7:16-cv-00103 (S.D. Tex. 2016). Indeed, as in those cases, Defendants are the proper parties to ACRU's suit. Finally, Defendants have not met their burden under Fed. R. Civ. P. 12(b)(7) of showing that dismissal is warranted because ACRU failed to join a necessary party.

## FACTUAL BACKGROUND

On January 26, 2016, ACRU sent a letter to Defendants via certified mail stating that, "[b]ased on [ACRU's] comparison of publicly available information published by the U.S. Census Bureau and the Federal Election Assistance Commission, [Philadelphia] county is failing to comply with Section 8 of the National Voter Registration Act." (Complaint ¶ 6; *see also* Complaint Exhibit A at 1.) ACRU sent a copy of the letter to the Pennsylvania Secretary of State. (Complaint Exhibit A at 3.)

Receiving no response from Defendants for more than three times the statutory waiting period,[2] ACRU filed the present action. ACRU named as Defendants the Philadelphia City Commissioners because, pursuant to Pennsylvania law, they "are the public entity empowered to register voters, oversee elections records and supervise list maintenance activities." (Complaint ¶ 5.)

*Department of State's Attempted Response Falls Short*

On April 14, 2016, 10 days after ACRU filed its Complaint, the Pennsylvania Department of State emailed a response to the President of the ACRU. (Motion Exhibit 1 at 1-2.) The email from the Department of State merely attached two letters that were sent to the Public Interest Legal Foundation in response to the Foundation's notice letter sent in January, 2016. Presumably, the letters were prompted by ACRU's Complaint. (Motion Exhibit 1 at 4 ("We understand that you have recently filed suit against Philadelphia in regard to your request.").)

---

[2] Pursuant to 52 U.S.C. § 20510(b), "A person who is aggrieved by a violation of [the NVRA] may provide written notice of the violation," and if, as relevant here, "the violation is not corrected … within 20 days after receipt of the notice if the violation occurred within 120 days before the date of an election for Federal office, the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation." (*See also*, Complaint at ¶ 10; Complaint Exhibit A at 2.)

In the first letter, "[i]n an effort to reduce the burden on the individual counties," the Department of State purported to respond to some of Public Interest Legal Foundation's specific requests for information from the Philadelphia election officials. (Motion Exhibit 1 at 3.) As to one subset of requested records, the Department noted that "the counties may have additional information." (Motion Exhibit 1 at 3.) In the second letter to the Public Interest Legal Foundation, the Department of State sought to explain the "list maintenance procedures that all *counties* are required to follow." (Motion Exhibit 1 at 4 (emphasis added).) The Department of State stated, "Pennsylvania law mandates that *county officials* perform list maintenance activities at least once a year," (Motion Exhibit 1 at 4 (emphasis added)), and detailed the steps counties should take to fulfill those obligations, (Motion Exhibit 1 at 4-6). According to the letter, "the Department is not aware of any counties who have failed to conduct reasonable list maintenance." (Motion Exhibit 1 at 4.)

*Defendants' Belated Response and One "Sample" Document*

Defendants mailed a letter dated April 18, 2016, to ACRU via certified and first class U.S. Mail. (Motion Exhibit 2 at 1.) ACRU did not receive the letter until April 25, 2016. (Declaration of Susan A. Carleson, attached as Exhibit A.) In this letter, Defendants referenced and attached the letters and the few records provided by the Department of State. (Motion Exhibit 2 at 3-16.) Defendants provide one "sample of a postcard that was mailed by the City Commissioners on April 15, 2016 to every registered voter." (Motion Exhibit 2 at 2.) Defendants state that ACRU can contact the Deputy Commissioner if they are "seeking an in-person appointment to review the [Defendants'] records." (Motion Exhibit 2 at 2.) Finally, Defendants state that they "take their obligations under state and federal election laws very seriously" and set forth their "belief that [they] are in full compliance with the [NVRA], amongst the many other

laws to which [they] are subject." (Motion Exhibit 2 at 2.) Defendants still did not provide the requested documents.

On April 28, 2016, a few days after ACRU received Defendants' letter, Defendants filed the present Motion.

## STANDARD OF REVIEW

"A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may be made as either a facial attack that contests the sufficiency of the pleadings to allege subject matter jurisdiction or a factual attack that seeks to prove that the court lacks subject matter jurisdiction regardless of what the complaint alleges." *Victoria Ins. Co. v. Mincin Insulation Servs.*, 2008 U.S. Dist. LEXIS 106536, *4 (W.D. Pa. Jan. 14, 2008) (citing *Mortensen v. First Federal Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). Defendants' Motion presents a facial attack that, as with a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "requires the court to accept the complaint's allegations as true and afford the plaintiff all favorable inferences drawn therefrom." *Id.* Along with these favorable inferences, "[a]s long as the parties are given an adequate opportunity to address the justiciability of the claim, the district court 'may inquire, by affidavits or otherwise, into facts as they exist.'" *Taylor Inv., Ltd. v. Upper Darby Township*, 983 F.2d 1285, 1290 n.7 (3d Cir. 1993) (internal citations omitted).

Similarly, when considering Defendants' 12(b)(6) Motion, ACRU "is afforded the safeguard of having all its allegations taken as true and all inferences favorable to [it] will be drawn." *Mortensen*, 549 F.2d at 891. "To survive a Rule 12(b)(6) motion to dismiss, a pleading 'must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'" *Stanton v. City of Philadelphia*, 2011 U.S. Dist. LEXIS 19916, *4 (E.D. Pa. Feb. 28, 2011) (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(7) for failure to join a party is evaluated by "the standards set forth by [Fed. R. Civ. P.] 19(a) and (b)." *Malibu Media, LLC v. Does*, 2013 U.S. Dist. LEXIS 620, *11 (E.D. Pa. Jan. 3, 2013). "Federal Rule of Civil Procedure 19 specifies the circumstances in which the joinder of a particular party is compulsory." *General Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007). If the joinder of a party is compulsory "but joinder is not feasible for one reason or another, 'the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed.' *Malibu Media, LLC*, 2013 U.S. Dist. LEXIS 620 at *12-13 (citing Fed. R. Civ. P. 19(b)). For example, the Court will consider "whether judgment rendered in the necessary party's absence would be adequate." *Id.* at 12. Only when "the court determines a party is indispensable," and joinder is not feasible, should the lawsuit be dismissed. *Id.* at 13.

## ARGUMENT

### I. This Case Presents a Live Controversy.

It is well established that "[t]he existence of a case and controversy is a prerequisite to all federal actions, including those for declaratory or injunctive relief." *Presbytery of the Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1462 (3d Cir. 1994) (citation omitted). A ripe case is one that consists of "a 'real, substantial controversy between parties' involving a 'dispute definite and concrete.'" *Peachlum v. City of York*, 333 F.3d 429, 434 (3d Cir. 2003) (internal citation omitted). "Ripeness doctrine requires courts to evaluate 'the fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration.'" *Save Ardmore Coalition v. Lower Merion Twp.*, 419 F. Supp. 2d 663, 670 (E.D. Pa. 2005) (citation omitted). Fundamentally, "ripeness is 'peculiarly a question of timing.'" *Taylor Inv., Ltd.*, 983 F.2d at 1290 (citation omitted).

Defendants claim that ACRU's Complaint should be dismissed because "there is simply not a ripe dispute or any live controversy between the parties." (Motion at 8.) In support of this contention, Defendants assert that (1) ACRU's harm is "self-created," (2) ACRU's notice letter was merely a "position or advocacy paper," and, in the alternative, (3) any ripe claim is now moot in light of Defendants' belated response. All three assertions fall short.

### A. ACRU's Harm Stems from Defendants' Inaction.

Defendants claim that ACRU's harm is "self-created" because ACRU "failed to actually attempt to review the records" it seeks. But that is simply not true. In its January 26, 2016 letter, ACRU requested "the opportunity to inspect the list maintenance documents outlined above." (Complaint Exhibit A at 3.) Eighty-three days passed before Defendants mailed a response providing a phone number by which ACRU may "seek[] an in-person appointment." (Motion Exhibit 2 at 2.) The records requested still have not been made available to the Plaintiff. Further, Defendant's Motion assumes that any resulting effort to make the records available will be conducted in manner that complies with the requirements of the NVRA. Defendants motion is therefore premature.[3]

Fundamentally, the NVRA does not require the action Defendants seek to impose on ACRU to establish ripeness. The plain language of the NVRA provides for a private right of action against the Defendant as soon as a "violation is not corrected" within the statutorily determined number of days after receipt of the letter which, here, is 20 days. 52 U.S.C. § 20510(b)(2). After such time, ACRU had a clear cause of action under the statute. *Id.*

Defendants asks this court to read into the statute a requirement that an aggrieved plaintiff satisfy requirements not found in the statute passed by Congress before a case is ripe.

---

[3] Notably, Defendants also state that "the NVRA only obligates the Commonwealth, not the City, to make records available for public inspection." (Motion at 10.)

7

Defendant's request contravenes established principles of statutory construction. A court "cannot rewrite [NVRA]" to avoid what the "statute expressly permits." *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1045 (9th Cir. 2015) (finding standing and ripeness under NVRA) (citing *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) ("[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.")). ACRU's claim is therefore ripe for adjudication on the face of the NVRA.

A decision from the federal District Court for the Southern District of Indiana supports the conclusion that this case is ripe. In *Judicial Watch v. King*, two organizations sued election officials in Indiana for failure to comply with the list maintenance and public inspection requirements of the NVRA. 993 F. Supp. 2d 919, 920 (S.D. Ind. 2012). The defendant argued that Judicial Watch did not satisfy the NVRA's statutory notice provision, effectively arguing that Judicial Watch's case was not ripe. The court rejected that argument. Because proper notice was given and the defendant denied that the notice letter "set forth a violation of the NVRA," *id.* at 921, the case was allowed to proceed. As explained, Plaintiff here has similarly satisfied the notice provision and Defendants have similarly denied that a violation is occurring. In that respect, the underlying facts and posture of *Judicial Watch* and this case are identical and, likewise, this case is ripe.

ACRU's so-called failure to "avail[] itself of the remedies available to it," mainly the "invitation" to make an appointment provided in Defendants' belated response, changes nothing. Not only do Defendants deny any responsibility for facilitating public inspection of election records (Motion at 9), they flatly denied that Philadelphia is in violation of NVRA. (Motion Exhibit 2 at 2 ("We strongly deny each and every one of the meritless accusations contained in

your letter.").) Defendants' actions are the same as those of the Defendant in *Ass'n of Cmty. Orgs. for Reform Now v. Miller*, 129 F.3d 833 (6th Cir. 1997). "The language and legislative history of [NVRA] indicate that Congress structured the notice requirement in such a way that notice would provide states in violation of the Act an opportunity to attempt compliance before facing litigation." *Id.* at 838. But where the Defendant has flatly refuted the alleged violations of NVRA, it "clearly indicate[s] that [the Defendant] would continue to refuse to comply with the Act until forced to do so by judicial intervention." *Id.* Any claim that Defendants would have cured the alleged violations before litigation are refuted by their own statements. For all of these reasons, ACRU's claims are ripe for adjudication.

**B.     ACRU's notice letter was sufficient and Defendants failed to respond.**

Likewise, Defendants' attempts to characterize ACRU's notice letter as insufficient fall short for two reasons. First, they mischaracterize the plain language of the notice letter. Remarkably, Defendants imply that ACRU's notice letter was insufficient by focusing on a few words and ignoring many others. Defendants claim that "the Plaintiff wanted to 'notify' the City of an '***apparent***' but not actual violation" of the NVRA. (Motion at 3 (emphasis in original).) But, looking further in the letter, the ACRU informed Defendants that "[b]ased on our comparison of publicly available information…your county is failing to comply with Section 8" of the NVRA. (Complaint Exhibit A at 1.) The notice letter goes on to state that Plaintiff "has therefore taken on the task of notifying you of your county's violation." *Id.* Despite Defendants' attempts to the contrary, the letter is unambiguous.[4]

---

[4] Defendants also claim that "[u]pon information and belief, Plaintiff has not received a separate response from any of the other Pennsylvania counties, to whom it sent letters." (Motion at 6 n.3.) This statement is both immaterial and incorrect.

9

Even Defendants' selective quotations fall short because they imply requirements that are not present in the NVRA. Defendants complain that ACRU's notice letter did not contain a "citation by which the City could obtain and review the information to which Plaintiff was referring." (Motion at 4.) First, the NVRA does not impose such a requirement. Second, despite ACRU providing contact information and requesting permission to inspect records, Defendants did not reply to ACRU with their apparent questions. Third, Defendants' claim of being confused about the term "2014 EAC Report," (Motion at 4 n.1,) is belied by the fact that the Department of State uses the exact same term in its letter (which Defendants reference extensively, *see* Motion at 5, and attached to their Motion as Exhibit 1). Aside from, again, imposing burdens not found anywhere in the plain language of the NVRA, Defendants' arguments have been rejected by other federal courts faced with practically identical circumstances.

The Fourth Circuit has found that the scope of records available to a plaintiff under the NVRA is expansive. There, the plaintiff requested that the local election official make completed voter registration applications available for public inspection. *Project Vote / Voting for Am., Inc. v. Long*, 682 F.3d 331, 333 (4th Cir. 2012). The officials denied the request, arguing that only the documents delineated in the statute must be disclosed. *Id*. at 336. The Fourth Circuit rejected that argument. "Because [the public records provision] merely describes a specific set of records that must be maintained—and is not an exclusive list—it does not shield completed voter registration applications from [the] public disclosure mandate." *Id*. at 337. The Court emphasized the importance of the public inspections provisions as "embod[ying] Congress's conviction that Americans who are eligible under law to vote have every right to exercise their franchise, a right that must not be sacrificed to administrative chicanery, oversights, or inefficiencies." *Project Vote*, 682 F.3d at 334-35.

Again, *Judicial Watch* supports ACRU's position here. There, the plaintiff organizations demonstrated the defendant's potential failure to comply with the NVRA in their notice letter and complaint by a "comparison of 2010 Census data and voter registration data indicated, which indicate[d] that the numbers of persons registered to vote exceeded the total voting population" in several Indiana counties, and was implausibly high in other counties. 993 F. Supp. 2d at 921. As the Defendants do here, the defendants in Indiana argued that such allegations were insufficient to put the election officials on notice that a violation of the NVRA had occurred, and therefore the NVRA's statutory notice provision had not been satisfied. *Id.* at 921. The court rejected the defendants' argument.

To satisfy the NVRA's notice provision, a notice letter "does not [need to] state unequivocally that a violation of the NVRA *has occurred*," the court explained. *Id.* at 922 (emphasis in original). Rather, it is enough that the letter speaks of an "apparent violation" or that "available information 'strongly suggests' non-compliance with the NVRA." *Id.* In this case, ACRU simply wanted to review and inspect records, and was denied.

Like Defendants here, the defendant in *Judicial Watch* also claimed the notice letter lacked "sufficient details" about the alleged violations of the NVRA to satisfy the notice required. *Id.* The court, likewise, rejected this argument. "It is not surprising," the court explained, "that the Letter does not contain any detailed allegations, inasmuch as the NVRA provision at issue does not contain any detailed requirements; it simply requires 'reasonable efforts'" on the part of election officials. *Id.* Accordingly, the court held it is sufficient to plausibly state a violation of the NVRA to provide "the reasons" for the plaintiff's conclusion that the defendant has not complied with that general requirement. *Id.*

*Judicial Watch*'s holding is supported further by Rule 8 of the Federal Rules of Civil Procedure. Rule 8 "requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Specific facts are not necessary[.]" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations and quotations omitted). For a claim to survive a motion to dismiss for failure to state a claim, it simply must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* The purpose of the NVRA's statutory notice requirement is similar to Rule 8; it is designed to provide election officials with fair notice that a violation is occurring and to provide them with a chance to cure the violations prior to litigation. *See Miller*, 129 F.3d 838.

### C. Defendants' belated response does not render this case moot.

Defendants then assert that ACRU's claims are moot because it "has been provided with the records and information it seeks" and "the City has voluntarily offered to provide [ACRU] with the relief it is seeking from this Court: access to the City's voting records." (Motion at 9.) Both statements are not accurate. No documents have been provided (aside from one "sample" document) and no inspection of the requested documents has been authorized.

First, Defendants' belated response only provided a single document (a "sample of a postcard") and did not provide all the documents requested nor permit any inspection of records as required by the NVRA for the requested items in the notice letter. (Motion Exhibit 2 at 1-2.) ACRU seeks access to original records held by Defendants as the statute permits, not summaries of registration statistics provided by a third party. This is especially true of the records requested in paragraphs (b), (d), (g), (i), and (j) of ACRU's notice letter as these paragraphs seek information related to Defendants' list maintenance activities. As is explained below, Defendants are primarily responsible for this task and, therefore, are the custodians of the records ACRU

seeks. Indeed, such documents are critical because they may provide a basis by which ACRU could seek leave to amend the complaint and add a claim regarding Defendants' failure to conduct reasonable list maintenance. Because Defendants have not provided the information which ACRU seeks, nor provided access to the information it seeks to inspect, ACRU's claims are not moot.

## II. Defendants Are the Proper Parties.

Defendants claim that ACRU's complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) "because the NVRA only obligates the Commonwealth, not the City, to make records available for public inspection." (Motion at 10.) Defendants are plainly wrong. Under Defendants' interpretation of the NVRA, the "public disclosure of records . . . is only applicable to the States, such as the Commonwealth of Pennsylvania, and not any other governmental body such as the City." (Motion at 10.) Defendants' arguments are contrary to the relevant federal and Pennsylvania statutes and are contrary to decisions by other federal courts such as the Fourth Circuit which affirmed that the NVRA obligates local election officials to provide requested records. *Project Long*, 682 F.3d 331. Further, Defendants' arguments have been squarely rejected recently by both the U.S. District Court for the Western District of Texas, *ACRU v. Tax Assessor-Collector Cindy Martinez-Rivera*, No. 2:14-cv-00026 (W.D. Tex. 2014), and the U.S. District Court for the Southern District of Texas, *ACRU v. Montalvo*, No. 7:16-cv-00103 (S.D. Tex. 2016).

### A. Under Pennsylvania law, Defendants, and not a third party, have "Jurisdiction" over voter registration and records.

Defendants' claim that they are not responsible for responding to ACRU's request is refuted by numerous Pennsylvania statutes. Pennsylvania law provides for the establishment of "commission[s]," which have "jurisdiction over the registration of applicants, qualified electors

and registered electors of the county." 25 Pa. Cons. Stat. Ann. § 1203(a) (2016). In a "city of the first class," like Philadelphia, "the commission shall consist of the three elected commissioners of the city." 25 Pa. Cons. Stat. Ann. § 1203(b)(2).

Pennsylvania law places the duty to retain records related to voter registration and list maintenance on each local commission. Specifically, the law requires:

> The department and each commission [to] preserve for two years and [to] make available for public inspection and, where available, photocopying at a reasonable cost all records concerning the implementation of programs and activities conducted for the purposes of ensuring the accuracy and currency of official lists of registered electors except to the extent that the records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular qualified elector is registered.

25 Pa. Cons. Stat. Ann. § 1405(b)(1). The aforementioned records include "lists of the names and addresses of all electors to whom notices described in section 1501 (relating to removal notices) are sent and information concerning whether or not the individual has responded to the notice as of the date that inspection of the record is made." 25 Pa. Cons. Stat. Ann. § 1405(b)(2).

Further, if "the registration of a registered elector is canceled for any cause" the commission "shall remove them from the general and district registers" and the record of such removal "shall be kept for five years." 25 Pa. Cons. Stat. Ann. § 1511(a).

Tellingly, Defendants *acknowledge* their responsibilities in their belated response letter to ACRU. Specifically, they stated that they "are in full compliance with the NVRA, amongst the many other laws *to which we are subject*." (Motion Exhibit 2 (emphasis added).) Likewise, the Department of State's belated response is replete with mentions of the *county's* responsibilities under the NVRA. (Motion Exhibit 1 at 3-5 ("The *counties* mail notices to voters...[t]he *counties* use the responses to its mailings to update the voter registration rolls...the *counties* places ...voter[s] on inactive status for eventual removal...[c]ounties will be expected to remove

14

deceased voters and verify and remove duplicate registrations...*counties* will be expected to contact voters who have moved...the *counties* will process data received from ERIC...the *county*...will send the voter an address verification notification...the *county* must then undertake a process to determine if the voter should be canceled from the voter registration rolls...I trust that the information provided in this letter provides assurance that Pennsylvania *counties* are conducting reasonable list maintenance efforts.") (emphasis added).)

Indeed, such an understanding is consistent with the NVRA itself. Congress provided election officials flexibility to implement a generalized program to keep voter rolls clean. Pennsylvania has done so by empowering Defendants with the responsibility of registering voters, overseeing election records, and supervising list maintenance activities, *see* 25 Pa. Code § 1203. (Complaint ¶ 5.) Under Pennsylvania law, Defendants have the primary responsibility for and functional control of the records ACRU seeks. Defendants' assertions to the contrary are without merit.

### B. Other federal courts have determined that local officials are the proper parties to suits pursuant to the NVRA.

Under nearly identical circumstances, the U.S. District Court for the Eastern District of Virginia and the Fourth Circuit ruled that public inspection and information rights under the NVRA obligate local officials to provide the requested information. *See Project Vote v. Long*, 752 F.Supp.2d 697, 703 (E.D. Va. 2010); *Project Vote v. Long*, 682 F.3d at 334-335. There, the plaintiff initially sent a public information request for election records to the local election official. After the local election official refused to provide the information, the state election official, *sue sponte*, sent a communication to plaintiff agreeing with the denial, similar to what has happened here. *Id.* at 699-700.

15

Also applicable here is that court's refusal to apply an absurd result in interpreting the language of the NVRA.

> Under a plain meaning analysis, the court will not apply a statute's plain meaning when it would frustrate the statute's purpose or lead to an absurd result. . . . [The stated purposes of the NVRA include] (3) to protect the integrity of the electoral process; and (4) *to ensure that accurate and current voter registration rolls are maintained*. . . . Reading these purposes together, it is evident that the last identified purpose of the statute is dependent upon, and is the culmination of, the fulfillment of the other purposes of the statute.

*Id.*, at 709-710 (emphasis in original) (internal citations omitted).

Importantly, this is not the first time a federal court has been faced with the question of whether ACRU named the proper party in a suit brought under the NVRA. The Western District of Texas squarely dealt with this argument in *Martinez-Rivera*. There, the ACRU filed a lawsuit against the Zavala County voting registrar for violations of Section 8 of the NVRA. Defendant there, as here, alleged that the ACRU failed to sue the proper party. *See ACRU v. Tax Assessor-Collector Cindy Martinez-Rivera*, No. 2:14-cv-00026, Dkt. 40 at 14 (W.D. Tex. 2014 Mar. 30, 2015) (order denying defendant's motion to dismiss and plaintiff's motion for leave to file first amended complaint) (attached as Exhibit B). The district court in *Martinez-Rivera* assessed the responsibilities of the voter registrar for maintaining the voter rolls and found that "[b]y fulfilling these duties, the county tax assessor-collectors enable the Texas Secretary of State to maintain accurate and current voter registration rolls, as mandated by the NVRA. *See* 52 U.S.C.§ 20507." *Id.* at 15. Just last week, the federal District Court for the Southern District of Texas relied on the reasoning of *Martinez-Rivera* to deny a motion to dismiss in an identical case brought pursuant to the list maintenance provisions of the NVRA. *See ACRU v. Montalvo*, No. 7:16-cv-103 (filed March 4, 2016) (Minute Entry of May 9, 2016, denying Motion to Dismiss for Failure to State a Claim) (attached as Exhibit C).

The Defendants' interpretation of the NVRA, that the Complaint should be brought against the Commonwealth when it is Defendants who are responsible for the maintenance of the records and who have control of the records sought, and when no state policies are challenged, should be rejected as having no legal merit.

### C. Defendants Have Not Shown that the Commonwealth Is a Necessary Party.

In order to succeed on their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(7), Defendants must establish that the Commonwealth is an indispensable party pursuant to Fed. R. Civ. P. 19. As explained above, the records ACRU seeks are controlled and maintained by Defendants. The Commonwealth likely does not possess some of them at all whatsoever. Therefore, it is a strain to see how the Commonwealth could be a proper party, let alone an *indispensable* party.[5] Enjoining the Defendants would provide the complete relief that ACRU is seeking.

As is mentioned above, several courts have proceeded with cases brought under the NVRA against local election officials. *See, e.g.*, Exhibits B, C; *ACRU v. Clarke County Election Commission*, No. 2:15-cv-101 (S.D. Miss. 2015).

The U.S. Eighth Circuit Court of Appeals has also weighed in on this issue. In *United States v. Missouri*, that court dealt with the question of whether a state official could be held liable under the NVRA for list maintenance violations by the local election officials within the state. 535 F.3d 844 (8th Cir. 2008). In that case, the state was trying to do the opposite of what the Defendant is trying to do here—claim that it was the local election official that is responsible and that the state official is not an appropriate party and that the state had met its obligations under the NVRA. *Id.* at 851. The Eighth Circuit explained that while the NVRA requires the

---

[5] Defendants failed to address the full standard, including why, even under their theory, it is equitable to dismiss the action. *See Malibu Media, LLC*, 2013 U.S. Dist. LEXIS 620 at *12-13.

state to conduct a general program of list maintenance, the state may delegate the actual administration of voter rolls and maintenance to local election officials. *Missouri*, 535 F.3d at 850. It is the local election officials, therefore, who are responsible for the list maintenance under NVRA. *Id.* The court held that a local official could be a proper party if the local official was the entity responsible for the particular behavior at issue. Here, the Defendants are the custodians of the information sought. The Defendants are the entity responsible for conducting list maintenance activities and keeping records of the same. The Commonwealth has nothing to do with this case.

## CONCLUSION

For the reasons stated above, Defendants' Motion should be DENIED.

Respectfully submitted,

For the Plaintiff ACRU:
Dated: May 12, 2016

LAW OFFICES OF LINDA A. KERNS, LLC
Linda A. Kerns, Esquire
1420 Locust Street –Suite 200
Philadelphia, PA  19102
PA Atty ID 84495
Tel:  (215) 731-1400
Fax: (215) 701-4154
linda@lindakernslaw.com

J. Christian Adams*
Kaylan L. Phillips*
PUBLIC INTEREST LEGAL FOUNDATION
209 W. Main Street
Plainfield, IN 46168
Tel: (317) 203-5599
Fax: (888) 815-5641
adams@publicinterestlegal.org
kphillips@publicinterestlegal.org

*\*Pro Hac Vice applications pending*

18

## CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2016, I caused the foregoing to be filed with the United States District Court for the Eastern District of Pennsylvania via the Court's CM/ECF system, which will serve all registered users.

Dated: May 12, 2016

LAW OFFICES OF LINDA A. KERNS, LLC
Linda A. Kerns, Esquire
1420 Locust Street –Suite 200
Philadelphia, PA  19102
PA Atty ID 84495
Tel:  (215) 731-1400
Fax: (215) 701-4154
linda@lindakernslaw.com