**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AMERICAN CIVIL RIGHTS UNION,<br>in its individual and corporate capacities, | ) <br> ) <br> ) | |
| *Plaintiff*, | ) <br> ) | |
| v. | ) <br> ) | Civil Action No. 2:16-cv-01507 |
| PHILADELPHIA CITY<br>COMMISSIONERS, | ) <br> ) <br> ) | |
| *Defendants*. | ) <br> ) | |
| _____ | ) | |

## PLAINTIFF ACRU'S MOTION FOR PRELIMINARY INJUNCTION

For the reasons stated in the accompanying Memorandum, Plaintiff American Civil Rights Union respectfully moves the Court for an order enjoining Defendants Philadelphia City Commissioners from violating Section 8 of the National Voter Registration Act of 1993, 52 U.S.C. § 20501, *et seq.*, by failing to remove ineligible incarcerated felon voters from Philadelphia's voter registration rolls.

Respectfully submitted,

For the Plaintiff ACRU:

Dated: July 20, 2016

J. Christian Adams*
Kaylan L. Phillips*
PUBLIC INTEREST LEGAL FOUNDATION
209 W. Main Street
Plainfield, IN 46168
Tel: (317) 203-5599
Fax: (888) 815-5641
adams@publicinterestlegal.org
kphillips@publicinterestlegal.org
*Admitted Pro Hac Vice

    /s/  Linda A. Kerns
LAW OFFICES OF LINDA A. KERNS, LLC
Linda A. Kerns, Esquire
1420 Locust Street –Suite 200
Philadelphia, PA  19102
PA Atty ID 84495
Tel:  (215) 731-1400
Fax: (215) 701-4154
linda@lindakernslaw.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AMERICAN CIVIL RIGHTS UNION, | ) | |
| in its individual and corporate capacities, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:16-cv-01507 |
| | ) | |
| PHILADELPHIA CITY | ) | |
| COMMISSIONERS, | ) | |
| *Defendants*. | ) | |
| | ) | |
| _____ | ) | |

## MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Plaintiff American Civil Rights Union ("ACRU"), by and through counsel, files this memorandum of law in support of its motion for a preliminary injunction to enjoin Defendants from violating Section 8 of the National Voter Registration Act ("NVRA") by failing to remove ineligible incarcerated felon voters from the Philadelphia County's voter registration rolls.

## PROCEDURAL AND FACTUAL BACKGROUND

On January 26, 2016, ACRU sent a notice letter to Defendants via certified mail (the "Notice") stating that, "[b]ased on [ACRU's] comparison of publicly available information published by the U.S. Census Bureau and the Federal Election Assistance Commission, [Philadelphia] county is failing to comply with Section 8 of the National Voter Registration Act." (Dkt. 1, ¶ 6; *see also* Dkt.1, Exhibit A at 1.) ACRU sent a copy of the letter to the Secretary of the Commonwealth. (Dkt. 1, Exhibit A at 3.)

ACRU's Notice informed Defendants' that Philadelphia County "has nearly more registrants than eligible citizens living in the county and may not be conducting reasonable list maintenance. . . ." (Dkt. 1, ¶ 6.) The Notice also invoked ACRU's statutory right to inspect "all

records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i).

After receiving no response from Defendants or the Secretary for more than three times the statutory waiting period,[1] on April 4, 2016, ACRU filed the above-captioned action, seeking declaratory and injunctive relief to compel Defendants' compliance with the National Voter Registration Act's ("NVRA") records inspection provisions. (Dkt 1.) On April 28, 2016, Defendants moved to dismiss the Complaint (Dkt. 5.) On May 12, 2016, ACRU filed its response in opposition to Defendants' motion to dismiss. (Doc. 9.)

On June 30, 2016, representatives from ACRU met with Defendants and their staff to discuss the allegations in the Complaint. During that meeting, Defendants stated the following:

1. Defendants do not remove the names of convicted felons who are confined in penal institutions from the voter rolls in Philadelphia. (Amended Verified Complaint ¶ 14.)

2. Defendants receive no information from any state or local law enforcement agencies regarding the names of incarcerated felons, nor do the Defendants request that information. (*Id*. ¶ 15.)

3. Defendants expressed surprise that anyone would be concerned about their failure to even inquire about registrants who are incarcerated for felony convictions from Philadelphia. (*Id*.)

---

[1] Pursuant to 52 U.S.C. § 20510(b), "A person who is aggrieved by a violation of [the NVRA] may provide written notice of the violation," and if, as relevant here, "the violation is not corrected … within 20 days after receipt of the notice if the violation occurred within 120 days before the date of an election for Federal office, the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation." (*See also*, Dkt. 1 at ¶ 10; Dkt. 1, Exhibit A at 2.)

4.  Defendants receive no information from any U.S. Attorney regarding the names of incarcerated felons, not do the Defendants request that information. (*Id*. ¶ 16.)

5.  Defendants do not make any notation to identify felons on the voter rolls. (*Id*. ¶ 17.)

Under Pennsylvania law, residents who are incarcerated on Election Day as a result of a felony conviction are not eligible to vote. 25 Pa. Cons. Stat. Ann. § 1301 and 25 Pa. Stat. Ann. § 3146.1. *See also*, http://www.dos.pa.gov/VotingElections/OtherServicesEvents/Documents/ EveryoneVotesPAGuide-Booklet-PrinterSpreads.pdf at 4.

Upon learning of Defendants' failures to utilize readily-available sources to remove ineligible felon voters from the voter registration lists, or even to make any notation to the registration records, ACRU began the process to amend its Complaint to seek additional relief under the NVRA. Contemporaneously with this motion, ACRU has filed a motion for leave to amend its complaint to seek declaratory and injunctive relief for Defendants' violations of 52 U.S.C. § 20507(a)(4), which requires Defendants "to conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters." (Amended Verified Complaint, Prayer for Relief at (A).) ACRU alleges that Defendants' failure to communicate with both state and federal court officials to identify and remove registrants who are no longer eligible to vote as a result of felony conviction violates Defendants' list maintenance duties under the NVRA. (Amended Verified Complaint ¶ 19.).

ACRU files the instant motion to enjoin Defendants from violating Section 8 of the NVRA by failing to remove ineligible felon registrants from the Philadelphia County's voter registration rolls. ACRU requests an order requiring Defendants to utilize all known sources, including city, state and federal court officials, to ascertain the identity of incarcerated felons and

4

to compel their removal from the County's voter rolls. Without such relief, the votes of all

Philadelphia and Pennsylvania voters will be placed in jeopardy of dilution.

**ARGUMENT**

The relief ACRU seeks is urgent. According to 52 U.S.C. § 20507(c)(2), any

"systematic[]" removal of ineligible voters must be completed "not later than 90 days prior to the

date of a…general election." The 2016 Presidential Election will take place on November 8,

2016. Assuming the removal procedure implemented is "systematic," there are only 21 days to

complete briefing, conduct argument, issue a decision and complete removal of ineligible felons

prior to August 10, the beginning of the 90-day period. Absent swift relief, a significant number

of ineligible felons will remain registered in Philadelphia County, eroding public confidence in

the integrity of the electoral process and causing eligible registrants to question whether their

vote was counted or canceled out by a fraudulent vote. Such harm is irreparable. For the

following reasons, preliminary injunctive relief should enter.

## I.      The Preliminary Injunction Standard.

"A party seeking a preliminary injunction must show: (1) a likelihood of success on the

merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting

preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the

public interest favors such relief." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir.

2004). Although the standard for a mandatory injunction is higher than a prohibitory injunction,

that standard is satisfied under these circumstances.

## II.      ACRU is Likely to Succeed on the Merits.

The Third Circuit instructs that in order to demonstrate a likelihood of success on the

merits "'[i]t is not necessary that the moving party's right to a final decision after trial be wholly

5

without doubt; rather, the burden is on the party seeking relief to make a *prima facie* case

showing a reasonable probability that it will prevail on the merits.'" *Am. Freedom Def. Initiative*

*v. SEPTA*, 92 F. Supp. 3d 314, 322 (E.D. Pa. 2015) quoting *Oburn v. Shapp*, 521 F.2d 142, 148

(3d Cir. 1975)).

A *prima facie* case plainly exists here. Incarcerated residents are not eligible to vote. 25

Pa. Cons. Stat. Ann. § 1301 and 25 Pa. Stat. Ann. § 3146.1. The NVRA requires Defendants to

make a "reasonable effort" to remove the names of ineligible registrants from the official lists of

eligible voters," including voters ineligible by virtue of felony conviction. 52 U.S.C. §

20507(a)(4). Yet Defendants readily admit that they make absolutely no effort to remove

incarcerated felons. (Amended Verified Complaint ¶¶ 14-17.) Defendants further admit that they

make absolutely no effort to communicate with multiple, authoritative sources with first-hand

knowledge of which registrants in Philadelphia have been convicted of felonies and should be

removed from the voter rolls upon incarceration. (*Id*. ¶¶ 15-16) In fact, representatives of the

Defendants expressed shock and surprise that Plaintiff would even care that ineligible felons

were on the rolls. (*Id*. ¶15.)

The number of ineligible felons who remain registered to vote in Philadelphia County is

potentially significant. According to The Sentencing Project, an organization devoted to felon

disenfranchisement issues, the number of residents ineligible to vote in Pennsylvania due to

felony conviction exceeds 54,000. *See* http://www.sentencingproject.org/the-facts/#map.

Overwhelmingly, the largest number of these inmates—28.1%—reside in Philadelphia County.

Pennsylvania Department of Corrections, Inmate Statistics, Dec. 31, 2015, *available at*

http://www.cor.pa.gov/About%20Us/Statistics/Documents/Year%20End%20-%20Calendar%20-

%20Inmate%20Statistics.pdf. Based on these numbers, the number of felons who remain registered to vote, but are not eligible to do so, could exceed 15,000.

Contrary to assertions expressed by Defendants to the Plaintiff, ineligible felons could still cast a ballot through an absentee ballot request. It is not accurate to say that simply because the ineligible felon is incarcerated that they could not participate in the upcoming federal election. Ineligible incarcerated felons could request ballots through third parties at their residence and the Defendants have utterly no way to detect that the request is being made by someone ineligible to be a registered voter.

An election official has an obligation to use tools to maintain the rolls that are reasonably matched to the circumstances. It is not close to "reasonable" for Defendants to knowingly ignore readily-available sources that could easily facilitate Defendants' removal of a large number of ineligible registrants who are prohibited from participating in the upcoming election. Accordingly, ACRU is likely to succeed on its claim that Defendants are in violation of the NVRA's list maintenance obligations.

### III.    ACRU Will Suffer Irreparable Harm if an Injunction is Denied.

"[T]he right of suffrage is a fundamental matter in a free and democratic society." *Reynolds v. Sims*, 377 U.S. 533, 561-62 (1964). "[T]he right of suffrage can be denied by a debasement or *dilution* of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise.'" *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (emphasis added) (quoting *Reynolds*, 377 U.S. at 555).

Where ineligible registrants remain on the voter rolls, it creates the likely possibility that a legitimate vote will be diluted, *i.e.*, canceled out, by an illegitimate registrant who has voted for himself or for another ineligible registrant. Defendants seem perfectly willing to allow such

7

circumstances to exist by virtue of their unwillingness to utilize readily-available resources who could aid them in their list maintenance duties.

Not only will actual vote dilution harm ACRU and its members absent relief, but it also damages the electoral process. Indeed, Congress enacted the NVRA specifically "to protect the integrity of the electoral process . . . and to ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b). Moreover, the Supreme Court has recognized

> Confidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy. Voter fraud drives honest citizens out of the democratic process and breeds distrust of our government. Voters who fear their legitimate votes will be outweighed by fraudulent ones will feel disenfranchised.

*Purcell*, 549 U.S. at 4. "[P]ublic confidence in the integrity of the electoral process has *independent significance*, because it encourages citizen participation in the democratic process." *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 197 (2008) (emphasis added).

The Commonwealth of Pennsylvania, including the Governor and Secretary, has also endorsed these interests as compelling in defense of its voter identification law, a measure, like proper list maintenance, that is designed to ensure that only eligible voters cast ballots. *See Applewhite v. Commonwealth*, 330 M.D. 2012, Determination on Declaratory Relief and Permanent Injunction (filed Jan. 17, 2014) (not reported), *available at* http://www.pacourts.us/assets/files/setting-647/file-3490.pdf?cb=a5ec29 ("Respondents identified the integrity and reliability of the electoral process, and public confidence in the system as the state interest."); *Applewhite v. Commonwealth*, 617 Pa. 563, 572 (2012) (Todd, J., dissenting) (identifying "election integrity and voter confidence" as the "stated underpinnings" of the Commonwealth's voter identification law).

This Court has noted that "[f]ederal courts have recognized that the holding of an upcoming election in a manner that will violate the Voting Rights Act constitutes irreparable harm to voters." *United States v. Berks Cty.*, 250 F. Supp. 2d 525, 540 (E.D. Pa. 2003) (collecting cases). The same is undoubtedly true under the NVRA provisions at issue here. Indeed, the potential harm to voter confidence and the electoral process "cannot be redressed by a legal or an equitable remedy following a trial," and is therefore irreparable. *Acierno v. New Castle Cty.*, 40 F.3d 645, 653 (3d Cir. 1994).

**IV.     Granting Preliminary Relief Will Not Result in Greater Harm to Defendants.**

Any potential burden encountered by Defendants as a result of the relief sought falls woefully short of outweighing the burden on the right to vote. ACRU and its members simply request that Defendants initiate and complete removal procedures for ineligible felons prior to the 2016 election. In other words, the relief sought will compel Defendants to conduct list maintenance duties they should have already been conducting for many years. "Although these reforms may result in some administrative expenses for Defendants, such expenses are likely to be minimal and are far outweighed by the fundamental right at issue." *Berks Cty.*, 250 F. Supp. 2d at 541 (citing *Johnson v. Halifax County*, 594 F. Supp. 161, 171 (E.D.N.C. 1984)).

**V.      The Public Interest Weighs in Favor of Protecting the Right to Vote.**

"Undoubtedly, the right of suffrage is a fundamental matter in a free and democratic society." *Reynolds*, 377 U.S. at 561-62. As this Court has recognized, "[o]rdering Defendants to conduct elections . . .  so that all citizens may participate equally in the electoral process serves the public interest by reinforcing the core principles of our democracy." *Berks Cty.*, 250 F. Supp. 2d at 541.

The burden on the Defendants is minimal.  At worst, they must merely match the list of incarcerated felons from Philadelphia with the voter registration records and conduct list maintenance to reflect the incarcerated felony status. Preventing ineligible criminals from participating illegally in a federal and state election is a paramount public interest and vastly outweighs any burden on the Defendants. Indeed, failing to conduct even the most elementary list maintenance regarding incarcerated felons is a grotesque dereliction of Defendants' responsibility to ensure only eligible voters are casting ballots.

ACRU is a nonprofit organization with the mission of promoting "election integrity, compliance with federal election laws, government transparency and constitutional government." (Amended Verified Complaint ¶ 4.).  Ensuring that potentially thousands of ineligible incarcerated felons are identified and properly processed on the registration rolls before the upcoming federal election is profoundly in the public interest.

## CONCLUSION

For the foregoing reasons, Plaintiff ACRU, on behalf of itself and its members, respectfully requests that the Court enter an order directing Defendants to take all necessary steps to identify and remove all ineligible felons in Philadelphia County by August 10, 2016.

July 20, 2016

For the Plaintiff ACRU:

Respectfully submitted,

| | |
|---|---|
| J. Christian Adams* |   /s/  Linda A. Kerns |
| Kaylan L. Phillips* | LAW OFFICES OF LINDA A. KERNS, LLC |
| PUBLIC INTEREST LEGAL FOUNDATION | Linda A. Kerns, Esquire |
| 209 W. Main Street | 1420 Locust Street –Suite 200 |
| Plainfield, IN 46168 | Philadelphia, PA  19102 |
| Tel: (317) 203-5599 | PA Atty ID 84495 |
| Fax: (888) 815-5641 | Tel:  (215) 731-1400 |
| adams@publicinterestlegal.org | Fax: (215) 701-4154 |
| kphillips@publicinterestlegal.org | linda@lindakernslaw.com |
| *Admitted Pro Hac Vice | |

**CERTIFICATE OF SERVICE**

I hereby certify that on July 20, 2016, I caused the foregoing to be filed with the

United States District Court for the Eastern District of Pennsylvania via the Court's CM/ECF

system, which will serve all registered users.

Dated: July 20, 2016

                                              /s/  Linda A. Kerns
                                            LAW OFFICES OF LINDA A. KERNS, LLC
                                            Linda A. Kerns, Esquire
                                            1420 Locust Street –Suite 200
                                            Philadelphia, PA  19102
                                            PA Atty ID 84495
                                            Tel:  (215) 731-1400
                                            Fax: (215) 701-4154
                                            linda@lindakernslaw.com