IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **AMERICAN CIVIL RIGHTS UNION** : | |
| : | |
| **Plaintiff,** : | |
| : | Civil Action |
| v. : | No. 16-01507 |
| : | |
| **PHILADELPHIA CITY COMMISSIONERS** : | |
| **Defendant.** : | |

## ORDER

AND NOW, this _____ day of _____, 2016, upon consideration of Defendant, Philadelphia City Commissioners' Motion to Dismiss the First Amended Verified Complaint, it is **HEREBY ORDERED** that the Motion is **GRANTED**. Plaintiff's claims are **DISMISSED with prejudice.**

BY THE COURT:

_____
The Honorable C. Darnell Jones, II

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **AMERICAN CIVIL RIGHTS UNION** : | |
| : | |
| Plaintiff, : | |
| : | Civil Action |
| v. : | No. 16-01507 |
| : | |
| **PHILADELPHIA CITY COMMISSIONERS** : | |
| Defendant. : | |

### DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1), 12(b)(6), and 12(b)(7)

Defendant, the Philadelphia City Commissioners, by and through its undersigned counsel, hereby files this Motion to Dismiss the First Amended Verified Complaint pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 12(b)(7).

Pursuant to Local Rule 7.1(c) Defendant hereby incorporates by reference the attached Memorandum of Law as though fully set forth at length.

Respectfully submitted,

Date: August 8, 2016   /s/ Kristin K. Bray
Kristin Kathryn Bray
Benjamin H. Field
City of Philadelphia Law Department
1515 Arch Street, 17th Floor
Philadelphia, PA 19102
(215) 683-5408
kristin.bray@phila.gov

2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **AMERICAN CIVIL RIGHTS UNION** : : **Plaintiff,** : : **v.** : : **PHILADELPHIA CITY COMMISSIONERS** : **Defendant.** : | Civil Action No. 16-01507 |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED VERIFIED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1), 12(b)(6), and 12(b)(7)

Defendant, the Philadelphia City Commissioners (hereinafter "the City" or "Defendant"), by and through its undersigned counsel, hereby files this Memorandum of Law in Support of its Motion to Dismiss Plaintiff's First Amended Verified Complaint for Lack of Subject-Matter Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), Failure to State a Claim pursuant to Fed. R. Civ. P. 12(b)(6), and Failure to Join a Party pursuant to Fed. R. Civ. P. 12(b)(7).

**I.    Introduction.**

The American Civil Rights Union's ("Plaintiff" or the "ACRU") First Amended Verified Complaint (the "Amended Complaint") seeks to hold the Philadelphia City Commissioners liable for alleged violations of the National Voter Registration Act ("NVRA") where no such violations exist and proper notice was not given. First, Count I alleges that the City has "not responded to Plaintiff's requests to inspect records and data, or to obtain records and data," and that the ACRU has been harmed because it "does not have the data and records" it requested. This is wrong on the facts and the law. As the City made clear in its first Motion to Dismiss, this claim – which has not been changed since it was first made on April 4 – fails because the City had responded to the ACRU's inquiries time and again, providing data, meeting

3

with the ACRU, providing the opportunity to review records, and responding in writing to specific inquiries.  Indeed, this is plain on the face of the ACRU's Amended Complaint which includes a new Count II based on information the ACRU obtained from the City in response to its inquiry.  Plaintiff cannot allege that the City did not provide it with information while simultaneously alleging a violation based on information it received.  Count II of the Amended Complaint, brought after the ACRU visited the City's offices, alleges the City does not have a program for cancelling the registration of incarcerated individuals and thereby (allegedly) fails to properly maintain voter registration records in violation of the NVRA.  But even accepting the factual allegations as true, this claim fails.  Under Pennsylvania law, although felons are not qualified absentee electors while incarcerated, they are permitted to be registered to vote.

The Court should dismiss Plaintiff's Complaint in its entirety for several reasons.  First, there is no live case or controversy between the parties as to Count I.  The Court therefore lacks subject matter jurisdiction and should dismiss Count I pursuant to Fed. R. Civ. P. 12(b)(1).  Similarly, Plaintiff failed to provide the notice required by the NVRA as to both Count I and Count II and both must be dismissed pursuant to Rule 12(b)(1).  Second, Plaintiff's claim in Count II fails as a matter of law and must be dismissed pursuant to Rule 12(b)(6).  And, lastly, Plaintiff's real concern appears to be with the laws of the Commonwealth of Pennsylvania which do not permit the removal of incarcerated felons from the voter registration rolls.  Therefore Plaintiff's Amended Complaint should be dismissed for failure to join a necessary party pursuant to Rule 12(b)(7).

Simply put, this Court should not indulge Plaintiff's attempt to use the NVRA to compel the City to cancel the voter registration of certain individuals where Pennsylvania law requires no such thing.  Rather, the Court should dismiss the ACRU's Amended Complaint with

prejudice in recognition of the clear mandate of the Pennsylvania Constitution that "no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage." Pa. Const. Art. I, Section 5.

## II.     Facts and Procedural History.

The "ACRU" initiated this litigation on April 4, 2016 and Defendant moved to dismiss the Complaint on April 28.  Dkts. 1, 5.  In its Motion to Dismiss, Defendant set forth relevant facts, including communications between the parties regarding the ACRU's inquiries and the City's efforts to provide the ACRU with the opportunity to review information.  *See* Dkt. 5 at 3-7.[1]  The ACRU met with the City on June 30, 2016, reviewed information, and followed up in writing on July 8.  A true and correct copy of the July 8, 2016 letter from L. Kerns is attached hereto as Exhibit 1.[2]  While the Motion to Dismiss was pending, and based on information the ACRU gleaned through its review of information, Plaintiff filed a Motion to Amend and a Motion for Preliminary Injunction.  Dkts. 13, 14.  The proposed Amended Complaint restated Count I and added Count II which alleged, based on information provided by the City in response to the ACRU's inquiries, that Defendant violates the NVRA by failing to properly administer its voter lists.  Similarly, the Motion for Preliminary Injunction seeks injunctive relief requiring Defendant to cancel the registration of individuals incarcerated for a felony.   The City

---

[1] Rather than restating the history in full, Defendant summarizes the facts set forth in its initial motion to dismiss and incorporates them and the exhibits herein by reference.

[2] On a motion to dismiss, the Court is not limited to the Amended Complaint alone.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." (citation omitted)). In addressing ripeness, a court may look at and rely upon evidence outside of the pleadings, such as affidavits and other documents.  *Save Ardmore Coalition* v. Lower Merion Twp., 419 F.Supp.2d at 669 (citing *Mortensen v. First Federal Saving & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

provided a detailed response to the July 8 letter on July 21, 2016.  A true and correct copy of the July 21, 2016 letter is attached as Exhibit 2.

Plaintiff alleges that it sent Defendant a "Notice" under the NVRA on January 26, 2016, in the form of a letter.  Amended Complaint, ¶6; Amended Complaint, Exhibit A.  That letter states that the ACRU wanted to "notify" the City of an "*apparent*" (but not actual) violation of the National Voter Registration Act.  Amended Complaint, Exhibit A at 1 (emphasis added).  In that same letter, Plaintiff confirmed that it was not informing the City of any actual violation of the NVRA but rather was notifying the City of what "*appear[ed] to be* a violation," of the NVRA.  Amended Complaint, Exhibit A at 3 (emphasis added).  Nor did Plaintiff request that the City provide information.  Rather, Plaintiff stated that had reviewed unspecified "publicly available" information, and then stated that if the City believed that "the [unspecified] publicly available information cited above is no longer accurate it would be helpful if [the City] *could* provide" ten categories of information.  Amended Complaint, Exhibit A at 2-3 (emphasis added).  Plaintiff did not provide the information, the City could not determine to what Plaintiff referred,[3] and as a result, the City could not respond in any way to that contingent request.  Lastly, Plaintiff also "request[ed] the opportunity to inspect the list maintenance documents outlined" in the letter.  Amended Complaint, Exhibit A at 3.

The ACRU does not (and cannot) allege it followed up on its letter prior to initiating this litigation and does not and cannot allege that it provided the City notice that the City was in violation of the informational access provisions of the NVRA.  Indeed, on April 18, 2016, the

---

[3] In its letter, the Plaintiff labels "information reported by the Election Assistance Commission for 2014" the "2014 EAC Report."  Despite this nomenclature, the City does not believe that Plaintiff is referring to an actual report published by the Federal Election Assistance Commission but rather a compilation of data in Plaintiff's possession.  Further, the City searched for a report by such a name on the Federal Election Assistance Commission's website but was unable to find any such document.

City responded to the ACRU.  *See* Motion to Dismiss Complaint, Exhibit 2, Dkt. 5-1 at 16.   In the City's April 18, 2016 letter, the City responded to the portions of Plaintiff's letter that appeared to request records, indicating where the City's records were duplicative of those already provided by the Department of State[4] or otherwise describing if the requested records existed.[5]  *Id*. at 1-2.  Additionally, because providing every record is voluminous, the City provided a sample of a postcard that was mailed by the City to every registered voter in the county.  *Id.*  Finally, the City indicated that if the Plaintiffs were seeking to review the requested records in person, the Plaintiff could do so by calling Deputy Commissioner Voigt to make an appointment.  *Id.*

Subsequently, on June 30, 2016, the ACRU accepted the City's invitation to review the City's records.  Amended Complaint, ¶14.  As described above, Plaintiff's counsel followed up with numerous additional requests in writing and the City replied.  *See* Exhibits 1 and 2.  In the July 8 letter, Plaintiff's counsel noted that "[w]e are keenly sensitive to any resource concerns and have demonstrated a commitment to minimizing any impacts on [the City]."  *See* Exhibit 1 at 6.  Despite the extensive informational access it had received and its pending request for further information, the ACRU amended its complaint shortly thereafter, reasserting Count I (despite having received this information) and adding a new Count II.

---

[4] As discussed in the City's initial Motion to Dismiss, Plaintiff also obtained records and information from the Department of State.  *See* Motion to Dismiss Complaint, Exhibit 1, Dkt. 5-1 at 4.
[5] The City declined to provide the names of its staff because it is the City's position that the NVRA does not require such information to be disclosed.  *Id.* at 2.  *Compare* 52 U.S.C. § 20507(i)(1) (requiring disclosure of list maintenance activities, not names of personnel).

### III. The Amended Complaint Must Be Dismissed for Lack of Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1).

Plaintiff's Amended Complaint should be dismissed in its entirety for a lack of subject matter jurisdiction. First, Count I should be dismissed because there is no live case or controversy between the parties regarding the City's response to the ACRU's informational request. And, second, both Count I and Count II should be dismissed because the ACRU never provided the required notice under the NVRA. "[F]ederal courts lack jurisdiction unless the contrary appears affirmatively from the record," *Renne v. Geary,* 501 U.S. 312, 316 (1991), and the burden for establishing jurisdiction always lies with the plaintiff. *Save Ardmore Coalition v. Lower Merion Twp.*, 419 F.Supp.2d 663, 669 (E.D. Pa. 2005). Where a plaintiff fails to do so, such as in the Amended Complaint, defendants challenge is properly brought in the form of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).[6] *Id.* at 669. In cases such as this, "[r]ipeness is a justiciability doctrine intended to prevent a court from entangling itself in abstract disagreements by avoiding premature adjudication." *Save Ardmore Coalition*, 419 F.Supp.2d at 670. "The function of the ripeness doctrine is to determine whether a party has brought an action prematurely, and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine." *Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003) (internal citations omitted). In considering whether a claim is ripe, the Courts look at both whether the facts of the case are "sufficiently developed to provide the court with enough information on which to decide the matter conclusively;" and, whether "a party [is] genuinely aggrieved so as to avoid expenditure of judicial resources on matters which have caused harm to no one." *Id*. at 433-34. Ripeness

---

[6] When assessing a defendant's claim, in a motion to dismiss, that a case is not ripe, a court may look at and rely upon evidence outside of the pleadings, such as affidavits and other documents. *Save Ardmore Coalition*, 419 F.Supp.2d at 669 (citing *Mortensen v. First Federal Saving & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

8

requires a "'real, substantial controversy between parties' involving a 'dispute definite and concrete.'" *Id*. at 434 (quoting *Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 298 (1979) (citation omitted)).

### A. Count I Must Be Dismissed Because There Is No Live Dispute As To A Violation of Section 8 of the NVRA.

In Count I, there is simply not a ripe dispute or any live controversy between the parties. As the ACRU's Amended Complaint (as well as the Motion for Preliminary Injunction, Dkt. 14) makes clear, the City has not denied the Plaintiff access to the records covered by the NVRA. *See* Amended Complaint ¶14 (stating that Susan Carleson, the President of the ACRU, met with Defendant on June 30, 2016 and that Defendant provided her with information). In fact, the City invited the Plaintiff to make an appointment to come review any and all public records Plaintiff wished to review and Plaintiff did just that. Plaintiff's counsel followed up on that meeting on July 8, 2016, with a six page letter itemizing 44 requests. *See* Exhibit 1. And the City responded to this letter in detail on July 21, 2016. *See* Exhibit 2. Having received access, Plaintiff certainly has not been harmed in the manner Count I states, nor has it been harmed in the manner Count I would require. Count I therefore must be dismissed. *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 723 (S.D. Miss. 2014) (finding no live controversy regarding disclosure of the Voter Roll as Plaintiff already had the information and therefore Plaintiff's request was moot).

Plaintiff not only received extensive information from the City, it utilized that information to assert Count II in the Amended Complaint. Article III of the United States Constitution requires that the federal courts adjudicate "'actual, ongoing cases or controversies.'" *County of Morris v. Nationalist Movement*, 273 F.3d 527, 533 (3d Cir. 2011) (quoting *Khodara Envtl., Inc. v. Beckman*, 237 F.3d 186, 192-93 (3d Cir. 2001)). "If developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or

prevent a court from being able to grant the requested relief, the case must be dismissed as moot." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 689-99 (3d Cir. 1996). It is well-settled in the Third Circuit that when a defendant voluntarily agrees to provide all the prospective injunctive relief sought by a plaintiff, then the Plaintiff's claims must be dismissed as moot. *Johnson v. Horn*, 150 F.3d 276, 287 (3d Cir. 1998).

Plaintiff has been provided with the records and information it seeks in its suit by the Commonwealth and the City, the exact relief that it seeks in Count I, making its claims in Count I wholly moot. The fact that Plaintiff brought this lawsuit prior to receiving information from the City does nothing to save Plaintiff's case from its jurisdictional defects.

**B. Counts I & II Must Be Dismissed Because Plaintiff Failed To Comply With The Notice Requirements Of The NVRA.**

Section 8 of the NVRA requires that states[7] maintain records and provide access to information. *See* 52 U.S.C. § 20507(i). The enforcement provisions of the NVRA provide a private right of action if a "person who is aggrieved by a violation of this chapter" has "provide[d] written notice of *the violation* to the chief election official of the State involved," and "the violation is not corrected . . . within 90 days after receipt of a notice under paragraph (1), or within 20 days after receipt of the notice if the violation occurred within 120 days before the date of an election for Federal office." 52 U.S.C. § 20510(b)(1) & (2) (emphasis added). Plaintiff's allegations are insufficient to state a claim that it provided the notice required by the NVRA before bringing an individual action.

---

[7] The Commonwealth of Pennsylvania maintains the voter registration lists and as argued in Section V, this Amended Complaint should also be dismissed for failure to join a necessary party.

10

The Amended Complaint alleges that on January 26, 2016, Plaintiff wrote to the City and made an informational request. Amended Complaint, ¶¶7, 8.[8] Plaintiff's Amended Complaint only alleges that it requested records, not that it was providing notice of the violation at issue in Count I – that the City was in violation of the NVRA's informational access provisions (nor could the ACRU so allege as the only letter referred to in the Amended Complaint is the letter they describe as their request for information). Moreover, the ACRU's letter is, at best, ambiguous as to whether it was actually requesting records from the City or, instead, acting as a position or advocacy paper. Plaintiff uses very careful language in its letter, only stating that it would be "helpful" if the City "could provide" records but does not plainly and directly request those documents. Amended Complaint Exhibit A, at 2. Moreover, Plaintiff indicated that it only wanted the City's records if the City 'believed' certain, undisclosed information in the Plaintiff's possession was "no longer accurate." Amended Complaint Exhibit A, at 2. Plaintiff did not tell the City that it was requesting the information in any and all circumstances. Amended Complaint Exhibit A, at 2. Lastly, the alleged notice letter provided the City with no specific information regarding the violation Plaintiff now alleges in Count II of the Amended Complaint.

Section 8 of the NVRA does not provide that Plaintiff can claim standing 20 days after requesting access, saying that there "appears" to be a violation, or generally stating that there may be a violation, but rather requires that Plaintiff provide notice of the alleged violation 20 days before bringing its claim. Courts evaluating the NVRA's notice provision have noted that Congress intended the notice requirement to provide states with an opportunity to comply with the NVRA before facing litigation. *See, e.g.*, *Cromwell v. Kobach*, No. 15-9300-JAR-JPO, 2016

---

[8] Plaintiff's allegation in paragraph 9 of the Amended Complaint that the City never responded to the ACRU's letter and did not provide information to the ACRU is factually incorrect as its own allegations regarding Ms. Carleson's meeting with the City makes clear. *See also*, Exhibits 1 & 2.

WL 4060260 (D.Kan, July 29, 2016).[9] Plaintiff has pleaded no facts to indicate it provided the City notice that its informational access rights were unequivocally violated prior to initiating this lawsuit. Nor has Plaintiff pleaded facts indicating that it provided the City notice regarding the violations it alleges in Count II of the Amended Complaint. Rather, the ACRU referred to an "apparent" violation based on allegedly public information that the City could not identify or review and what it perceived as a discrepancy in voter registration lists. *See* Amended Complaint, Exhibit A ("your county has nearly more registrants than eligible citizens . . . and may not be conducting reasonable list maintenance to ensure non-citizens are not improperly registering to vote"). The record is clear, Defendant was never provided the notice required under the NVRA.

### IV. Count II Of The Amended Complaint Fails To State A Claim Because The City Complied With Both Federal And State Law And Therefore Must Be Dismissed Pursuant To Fed. R. Civ. P. 12(b)(6).

The Court must dismiss an action on motion made before a responsive pleading is filed, when a complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The role of the courts in interpreting a statute is to give effect to Congress's intent.... Because it is presumed that Congress expresses its intent through the ordinary meaning of its language, every exercise of statutory interpretation begins with an examination of the plain language of the statute." *United States v. Diallo,* 575 F.3d 252, 256 (3d Cir. 2009) (quoting *Rosenberg v. XM Ventures,* 274 F.3d 137, 141 (3d Cir.2001)). *See also Lamie v. United States Tr.,* 540 U.S. 526, 534 (2004) (stating "when the statute's language is plain, the sole function of the courts…is to enforce it according to its terms."). Count II of the Amended Complaint alleges that the City has failed "to make reasonable efforts to conduct voter list

---

[9] The record of communications between Defendant and the ACRU demonstrates that had the ACRU provided a clear information request and notice of an alleged informational violation, there would be no cause for litigation.

maintenance programs" in violation of the NVRA. Amended Complaint, ¶ 29. More specifically, the ACRU alleges that "Defendants are in noncompliance with the NVRA because they have failed to remove or notate registrants who are incarcerated felons and have failed to communicate with state and local law enforcement agencies and U.S. Attorneys regarding identifying felons." Amended Complaint, ¶ 19. Simply put, the ACRU is claiming that the City had an obligation under the NVRA to remove "incarcerated felons" from the voter lists and that their failure to make efforts to do so violates the Act. This claim is utterly devoid of legal support and fails as a matter of law.

Section 8 of the NVRA provides that "A State shall complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters," and that a registered voter "may not be removed from the official list of eligible voters except" in limited circumstances which include "*as provided by State law*, by reason of criminal conviction or mental incapacity." 52 U.S.C. § 20507(c)(2)(A); 20507(a)(3)(B) (emphasis added).[10] The plain language of the NVRA is clear: removal of names "by reason of criminal conviction" is only to happen "as provided by state law." As discussed below, the Commonwealth of Pennsylvania does not provide for the removal of such names and, as a result, the ACRU's claims against the City fail.[11]

The Amended Complaint references Pennsylvania law in passing, stating that "[c]onvicted felons *who are confined in a penal institution* are not qualified to vote in

---

[10] Defendant does not dispute that Section 21803 regarding computerized statewide registration lists requires regular maintenance of such lists, and Plaintiff knows that Defendant is conducting this list maintenance and has not alleged otherwise.

[11] As discussed in Section V, Defendant adheres to the Commonwealth of Pennsylvania's laws. To the extent Plaintiff is really arguing that those laws conflict with the NVRA, this Court cannot grant a remedy without the Commonwealth being joined to this Action.

Pennsylvania," but does not disclose the full extent of Pennsylvania law on this issue. Amended Complaint ¶12 (emphasis added). The seminal Pennsylvania case addressing this topic is *Mixon v. Commonwealth*, 759 A.2d 442 (2000). In *Mixon*, the Pennsylvania Supreme Court determined that under Pennsylvania law, "incarcerated felons are not qualified absentee electors." *Id.* at 450. In Pennsylvania, therefore, no one is deprived of voting rights solely "by reason of criminal conviction." Rather, a subset of incarcerated persons (those who are incarcerated for a felony) are not allowed to vote while they are incarcerated. Their registration, however, is not revoked. *See id.* At 451 (noting that in Pennsylvania individuals who are registered prior to incarceration are "may vote upon their release"); 25 P.S. §§ 2602(w); 3146.1; *Owens v. Barnes*, 711 F.2d 25, 26, n.2 (3d. Cir. 1983). Indeed, Pennsylvania permits individuals incarcerated for non-felonies to obtain an absentee ballot and vote. *Owens*, 711 f.2d at 26, n.2. The Amended Complaint (as well as their other filings with this Court) elides this distinction by incorrectly suggesting that Pennsylvania law requires that felons not be permitted to vote. [12]

Importantly, Pennsylvania has codified the activities it requires of the City in the maintenance and removal of voters from the registration rolls and that statute does not even reference felons or incarcerated persons, much less require the removal of their registration from a voting list. *See* 25 Pa.C.S.A. §1901(a). As that statute makes clear, Pennsylvania *prohibits* cancellation of an elector's registration except: "(1) At the request of the elector; (2) Upon the death of the elector under section 1505 (relating to death of registrant); (3) Upon confirmation

---

[12] In its Response to the Order to Show Cause, Plaintiff says "the list maintenance provisions of NVRA . . . require voter registration list maintenance with respect to registrants who are ineligible to vote under state law because of felon status." Dkt. 19 at 2. In applying this to Pennsylvania, Plaintiff elides the distinction between Pennsylvania (in which incarcerated felons are not qualified absentee electors), and states such as Virginia and Florida in which anyone convicted of a felony loses their right to vote entirely. *See* VA Const. Art. 2 §1 ("No person who has been convicted of a felony shall be qualified to vote unless his civil rights have been restored by the Governor or other appropriate authority."); West's F.S.A. Const. Art. 6 §4 ("No person convicted of a felony . . . shall be qualified to vote or hold office until restoration of civil rights…."). Plaintiff was advised of the City's position on Pennsylvania law in the July 22 letter, prior to the filing of its Response. *See* Exhibit 2 at 2.

that the elector has moved to a residence outside the county; or (4) Under a voter removal program as provided for under subsection (b), and in compliance with the National Voter Registration Act of 1993 [requiring removal when an individual moved] (Public Law 103-31, 42 U.S.C. § 1973gg et seq.).[13] *Id.* The Commonwealth could not be clearer as to the maintenance of voter registration lists: the laws of the Commonwealth of Pennsylvania do not provide for the cancellation of an elector's registration by reason of that elector's incarceration.

Of course there is sound reason for Pennsylvania's statutory structure. *Mixon* made clear that under the Commonwealth's laws, incarcerated felons who are registered to vote are not qualified absentee electors, but that they may vote *immediately* upon release. Reflecting this, the Commonwealth does not provide for the cancellation of these individuals' voter registrations. Rather, it specifically details the circumstances in which an incarcerated individual may obtain an absentee ballot (e.g. if they are incarcerated for a misdemeanor). Pennsylvania thereby ensures that the incarcerated individuals the ACRU is so concerned may "dilute"[14] the general vote are *not* provided with an absentee ballot. The Commonwealth appears to have made the determination that such individuals should not have their registration cancelled as they cannot vote while incarcerated (without committing voter fraud) and ensuring their right to vote remains is of utmost importance in Pennsylvania. Although the ACRU may not like Pennsylvania's

---

[13] Subsection (b) referenced in §1901(a)(4) sets forth the procedures for cancelling a registration where a voter is no longer a resident of the County. As with subsection (a), this section makes no reference to cancelling the registration of felons or incarcerated individuals.

14 At the core of Plaintiff's Amended Complaint is its (hypothetical) concern that an incarcerated felon might vote. In the ACRU's view, were an individual incarcerated for a felony offense to obtain and submit an absentee ballot in Pennsylvania, this would "dilute" the voting rights of the general public. This turns the concept of vote dilution on its head. "Dilution" is specifically addressed in the Voting Rights Act which describes vote dilution as occurring when a class of citizens has "less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." 52 U.S.C. § 10301. That section was enacted by Congress to help effectuate the Fifteenth Amendment's guarantee that no citizen's right to vote shall be denied or abridged on account of race. *See Voinovich v. Quilter*, 507 U.S. 146, 152 (1993).

statutory structure, Plaintiff's allegation that there is a violation of the NVRA (which refers to State law) is wrong and Count II must be dismissed for failure to state a claim.[15]

### V. Count II Should Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6) Because Plaintiff's Claim Cannot Be Stated Against The City And For Failure To Join A Necessary Party Pursuant to Fed. R. Civ. P. 12(b)(7) Because Plaintiff Cannot Obtain The Requested Relief Without Joinder Of The Commonwealth.

The applicable standard for a Rule 12(b)(6) motion is well-settled. Under this Rule, the Court must dismiss an action on motion made before a responsive pleading is filed, when a complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The role of the courts in interpreting a statute is to give effect to Congress's intent.... Because it is presumed that Congress expresses its intent through the ordinary meaning of its language, every exercise of statutory interpretation begins with an examination of the plain language of the statute." *United States v. Diallo,* 575 F.3d 252, 256 (3d Cir. 2009) (quoting *Rosenberg v. XM Ventures,* 274 F.3d 137, 141 (3d Cir.2001)). *See also Lamie v. United States Tr.,* 540 U.S. 526, 534 (2004) (stating "when the statute's language is plain, the sole function of the courts…is to enforce it according to its terms.")

The NVRA's plain language regarding the removal of ineligible voters from lists of eligible voters states that a registered voter "may not be removed from the official list of eligible voters except" in limited circumstances which include "as provided by State law, by reason of criminal conviction or mental incapacity." 52 U.S.C. § 20507(c)(2)(A); 20507(a)(3)(B). The law of the Commonwealth of Pennsylvania does not direct Defendant to remove incarcerated

---

[15] Plaintiff's Response to the Court's Order to Show Cause, Dkt. 19, argues, for the first time, that its claim is predicated not only on the NVRA, but also on the Help America Vote Act ("HAVA"). 52 U.S.C. § 21083(a) *et seq*. Defendant does not address HAVA herein as it is not referenced in Plaintiff's First Amended Verified Complaint. Defendant notes, however, that nothing in HAVA changes the "as required by state law" provision of the NVRA. And although states such as Virginia and Florida may require the removal of felons from registration lists, *see* Declaration of Donald Palmer, Dkt. 19-1, Pennsylvania law does not.

16

felons from the official list of eligible voters.  Plaintiff's claim when properly understood cannot be stated against Defendant.[16]  *See also Ashcroft v. Iqball*, 556 U.S. 662, 678-79 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007) and stating that a Complaint must contain something more than "'naked assertion[s]' devoid of 'further factual enhancement.'").  Accordingly, the Complaint should be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

Even assuming *arguendo* that Count II can be stated against the City, Plaintiff's claim cannot proceed in the absence of the Commonwealth.  Under Federal Rule of Civil Procedure 12(b)(7), a suit cannot proceed in the absence of a party required to be joined under Federal Rule of Civil Procedure 19.  Under Rule 19(a) a party, who is subject to service of process, must be joined if, in the absence of that party the court cannot afford complete relief amongst the existing parties.  If a Plaintiff failed to bring suit against an indispensable party, then the lawsuit must be dismissed.  *General Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007).  The relief sought in Count II would require that the Court rule that Pennsylvania requires each county to cancel the registration of incarcerated felons.  That is contrary to established case law precedent and to the clear language of Pennsylvania's Statutes.  Counties such as Philadelphia could not so act unless state laws were changed and, therefore, the Commonwealth is a necessary party.

---

[16] State is a defined term under the NVRA meaning "a State of the United States and the District of Columbia." 52 U.S.C. § 20502(4).  Section 20510(b)(1) goes on to provide that a person may have a cause of action once they give notice to the "chief election official of the State involved."  Plaintiff appears to have understood this as it included the chief election official of Pennsylvania as a "cc" on its January 26, 2016 letter.  However, Plaintiff has not explained in its Amended Complaint or other filings why it can enforce the NVRA against an entity such as the City as opposed to the Commonwealth when it is the law of the Commonwealth that is at issue.

**VI.     Conclusion**

For the reasons discussed herein, it is respectfully requested that Defendant City of Philadelphia's Motion to Dismiss the First Amended Verified Complaint for a Lack of Subject Matter Jurisdiction and for Failure to State a Claim be granted.  Plaintiff's claims are not ripe and, to the extent that they ever were ripe, are now moot.  And Count II fails as a matter of law.  Further, Plaintiff has failed to bring a claim upon which relief may be granted or, in the alternative, has failed to join a necessary party.  Therefore, pursuant to Fed. R. Civ. P. 12(b)(1), (b)(6), and (b)(7), the claims against the City Commissioners should be dismissed with prejudice and the City Commissioners should be dismissed as a party from this action.

Respectfully submitted,

Date:  August 8, 2016

/s/ Kristin K. Bray
Kristin Kathryn Bray
Benjamin H. Field
City of Philadelphia Law Department
1515 Arch Street, 17th Floor
Philadelphia, PA 19102
(215) 683-5408
kristin.bray@phila.gov