**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

AMERICAN CIVIL RIGHTS UNION,        )
in its individual and corporate capacities,        )
                                                             )
                                      *Plaintiff*,        )
                                                             )
              v.                                           )        Civil Action No. 2:16-cv-01507
                                                             )
PHILADELPHIA CITY                         )
COMMISSIONERS,                            )
                                      *Defendants*.        )
_____        )

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS THE AMENDED COMPLAINT
PURSUANT TO FED. R. CIV. P. 12(b)(1), 12(b)(6), and 12(b)(7)**

        Plaintiff American Civil Rights Union ("ACRU"), by and through counsel, files this

Response in Opposition to Defendants' Motion to Dismiss the Amended Complaint Pursuant to

Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 12(b)(7), and Memorandum of Law in Support. (Dkt No.

22.) Plaintiff opposes Defendants' Motion.

        **I.        Introduction and Summary of the Argument**

        In this action, the ACRU has properly pleaded a cause of action against the Philadelphia

City Commissioners ("Commissioners") under 52 U.S.C. § 20510(b) for violations of Section 8

of the National Voter Registration Act ("NVRA").[1] The parties have worked to resolve the claim

related to the inspection of public records and, with the inspection held on August 24, 2016, and

copies produced today, ACRU is satisfied that the Commissioners have provided full inspection.

Court II, however, alleges that the Commissioners are not complying with the list maintenance

provisions of Section 8. (Am. Compl. ¶¶ 28-32.) The January 26, 2016 notice letter (hereinafter

_____

[1] List maintenance obligations and public record rights at issue in this case under 52 U.S.C. §
20507 are commonly referred to as "Section 8" obligations under the NVRA as they were
contained in Section 8 of Pub. L. 103-31, May 20, 1993, 107 Stat. 77.

the "Notice Letter") served as proper notice of these violations, as required by Section

20510(b)(1) of NVRA. (Am. Compl. Exh. A.)

Section 8 of the NVRA, as enhanced by Section 21083 of the Help America Vote Act

("HAVA"), requires that election officials maintain accurate and current voter rolls. 52 U.S.C. §

20501(b)(4) (among the stated purposes of the NVRA is: "ensur[ing] that accurate and current

voter registration rolls are maintained"). List maintenance is to be accomplished by the

appropriate election officials under the relevant sections of those statutes. For example, those

sections require election officials to ensure that the lists of eligible voters do not contain the

names of those who become ineligible by reason of a criminal conviction, as provided by state

law. *See, e.g.*, 52 U.S.C. § 20507(a)(3)(B). Furthermore, the fact that Philadelphia has an

implausibly high rate of registration is suggestive of inadequate list maintenance. Count II

alleges that the Commissioners are not conducting reasonable list maintenance based on these

arguments.

Count II should not be dismissed under Rule 12(b)(1). ACRU's Notice Letter provided

notice to the Commissioners that they were in apparent violation of Section 8 of NVRA based on

a "comparison of publicly available information published by the U.S. Census Bureau and the

Federal Election Assistance Commission." (Am. Compl. Exh. A.) The assertions contained the

Notice Letter are sufficient to provide the notice required under NVRA because the

Commissioners have been made aware that there is a problem with the maintenance of the rolls.

Nor should Count II be dismissed under Rule 12(b)(6). The Amended Complaint states a

plausible claim for relief. It informs the Commissioners that publicly available data shows that

the City of Philadelphia "has nearly more registrants than eligible citizens," a circumstance that

strongly suggests the Commissioners "may not be conducting reasonable list maintenance to

ensure noncitizens are not improperly registering to vote." (Am. Compl. Exh. A.) ACRU

supports Court II further by alleging that the Commissioners are not ensuring that the names of

ineligible voters are not on the list of eligible voters, such as incarcerated felons, who are

ineligible under Commonwealth law. (Am. Compl. ¶¶ 11-19.) Regardless of whether

Pennsylvania law affirmatively requires the removal of incarcerated felons, those individuals are

disenfranchised, *see Mixon v. Commonwealth*, 759 A.2d 442, 450 (Pa. 2000) ("no violation of

constitutional rights occurs in the disenfranchisement of incarcerated felons"), and therefore

cannot appear on the list of eligible voters in accordance with federal list maintenance duties

under NVRA and HAVA. Contrary to the Commissioners' argument, complying with Section

8's instructions to ensure that the names of ineligible voters should not be on the lists of eligible

voters does not conflict with Pennsylvania law and does not affect any person's right of suffrage.

ACRU's allegations state a plausible claim for relief, and should not be dismissed.

Finally, the Amended Complaint should not be dismissed under Rule 12(b)(7) because

the Commonwealth is not a necessary party to this action. Commonwealth precedent and statutes

do not explicitly state that the names of incarcerated felons must be preserved on the lists of

eligible voters. Therefore, there is no inherent conflict between the requirements of NVRA and

Commonwealth law here. Instead, NVRA provides additional list maintenance obligations

regarding whether persons who are ineligible to voter under state law may appear on the rolls.

## II.    Facts and Procedural History

On January 26, 2016, ACRU sent the Notice Letter to the Commissioners by certified

mail stating that, "[b]ased on [ACRU's] comparison of publicly available information published

by the U.S. Census Bureau and the Federal Election Assistance Commission, [Philadelphia] is

failing to comply with Section 8 of the National Voter Registration Act." (Am. Compl. ¶ 6; *see*

*also* Am. Compl. Exh. A at 1.) ACRU sent a copy of the Notice Letter to the Pennsylvania Secretary of State. (Am. Compl. Exh. A at 3.)

On April 4, 2016, receiving no response from the Commissioners for more than three times the statutory waiting period,[2] ACRU filed the present action. (Dkt No. 1.) ACRU named the Philadelphia City Commissioners as Defendants because collectively, pursuant to Pennsylvania law, they "are the public entity empowered to register voters, oversee elections records, and supervise list maintenance activities." (Am. Compl. ¶ 5.) On April 28, 2016, the Commissioners filed a Motion to Dismiss ACRU's Complaint pursuant to Fed. R. Civ. Proc. 12(b)(1), 12(b)(6), and 12(b)(7). (Dkt No. 5.) ACRU filed a response in opposition to Commissioners' Motion to Dismiss on May 12, 2016. (Dkt No. 9.)

In their renewed Motion to Dismiss filed on August 8, 2016, the Commissioners assert that they did not respond prior to ACRU filing its original complaint because they did not understand what was requested or how to find voter registration data from the Election Assistance Commission or voting age citizen data from the United States Census Bureau. (Defs' Second Mot. to Dismiss 6 and n.3.) Commissioners claim that the Notice Letter did not contain strong enough language and that ACRU did not follow up on the letter. *Id.* Yet Commissioners did not respond at all until *after* suit was filed.

After the initiation of this litigation, the ACRU first received a response—not from the Commissioners, but from the Department of State, on April 14, 2016. (Dkt No. 5-1.) The email from the Department of State merely attached two letters that were sent to the Public Interest

---

[2] Pursuant to 52 U.S.C. § 20510(b), "A person who is aggrieved by a violation of [the NVRA] may provide written notice of the violation," and if, as relevant here, "the violation is not corrected . . . within 20 days after receipt of the notice if the violation occurred within 120 days before the date of an election for Federal office, the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation." (*See also* Am. Compl. ¶ 10; Am. Compl. Exh. A at 2.)

Legal Foundation in response to the Foundation's letter also sent in January 2016. Presumably, this correspondence was prompted by ACRU's Complaint. (Dkt No. 5-1 at 5 ("We understand that you have recently filed suit against Philadelphia in regard to your request.").)

In the first letter to the Public Interest Legal Foundation, "[i]n an effort to reduce the burden on individual counties," the Department of State purported to respond to some of Public Interest Legal Foundation's specific requests for information from the Philadelphia election officials. (Dkt No. 5-1 at 4.) As to one subset of requested records—regarding incarcerated felon registrants—the Department noted that "the counties may have additional information." (Dkt No. 5-1 at 4.) In the second letter to the Public Interest Legal Foundation, the Department of State sought to explain the "list maintenance procedures that all *counties* are required to follow." (Dkt No. 5-1 at 5 (emphasis added).) The Department of State stated, "Pennsylvania law mandates that *county election officers* perform list maintenance activities at least once per year," (Dkt No. 5-1 at 5 (emphasis added)), and detailed the steps counties should take to fulfill those obligations, (Dkt No. 5-1 at 5-7). According to the letter, "the Department is not aware of any counties who have failed to conduct reasonable list maintenance." (Dkt No. 5-1 at 5.)

ACRU did not receive a response from the Commissioners until April 25, a mere three days before the latter filed their initial motion to dismiss. This response attached only one additional document. ACRU has since visited the Commissioners' offices on June 30 and again on August 24, 2016, in order to review list maintenance documents and discuss the requests for inspection. Today, August 29, 2016, the Commissioners provided the final copies requested at the August 24 meeting and inspection.

### III.     Relief Sought by the Public Inspection Claim Has Been Satisfied.

On August 24, 2016, the parties met and conferred in order to work out the public

inspection claim in Count I of the Amended Complaint. During that meeting, ACRU was able to

inspect the remaining list maintenance records referred to in the Commissioners' letter of June

26, 2016. (Defs.' Mot. to Dismiss Exh. 2 at 2.) ACRU requested copies of certain documents and

those were provided today, August 29, 2016. These recent inspections and copies have provided

ACRU with all the relief sought under its public records inspection claim. Accordingly, ACRU

agrees that, as of today, Count I of its Amended Complaint has been fulfilled by developments

during the course of the litigation. *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 689-99

(3d Cir. 1996); *Johnson v. Horn*, 150 F.3d 276, 287 (3d Cir. 1998). ACRU does not concede that

Count I should be dismissed based on any other reason given by the Commissioners in their

Motion to Dismiss.

### IV.     The ACRU Provided the Notice Required by the NVRA.

"A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may be

made as either a facial attack that contests the sufficiency of the pleadings to allege subject

matter jurisdiction or a factual attack that seeks to prove that the court lacks subject matter

jurisdiction regardless of what the complaint alleges." *Victoria Ins. Co. v. Mincin Insulation

Servs.*, 2008 U.S. Dist. LEXIS 106536, *4 (W.D. Pa. Jan. 14, 2008) (citing *Mortensen v. First

Federal Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). The Commissioners' Motion

presents a facial attack that, as with a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6),

"requires the court to accept the complaint's allegations as true and afford the plaintiff all

favorable inferences drawn therefrom." *Id*. Along with these favorable inferences, "[a]s long as

the parties are given an adequate opportunity to address the justiciability of the claim, the district

6

court 'may inquire, by affidavits or otherwise, into facts as they exist.'" *Taylor Inv., Ltd. v. Upper Darby Township*, 983 F.2d 1285, 1290 n.7 (3d Cir. 1993) (internal citations omitted).

The Notice Letter provided adequate notice of a violation of the list maintenance provisions of the NVRA. (Am. Compl. ¶ 5.) It states in no uncertain terms that the Commissioners are "failing to comply with Section 8 of the National Voter Registration Act (NVRA)" by not making "a reasonable effort to maintain voter registration lists free of dead voters, ineligible voters and voters who have moved away." (Am. Compl. Exh. A at 1.) The ACRU is required to provide notice of a violation, 52 U.S.C. § 20510(b)(1); it is not required to conclusively and exhaustively explain to the Commissioners how it is that Philadelphia came to have nearly more registrants on its voter rolls than it has voting age citizens. The Election Assistance Commission publishes data after every general federal election providing the registration numbers for jurisdictions across the country. The tables can be found, in multiple formats, at: http://www.eac.gov/research/election_administration_and_voting_survey.aspx. A report summarizing the findings is also published at: http://www.eac.gov/assets/1/Page/2014_ EAC_EAVS_Comprehensive_Report_508_Compliant.pdf.[3] Citizen voting age population figures are published here: http://www.census.gov/rdo/data/voting_age_population _by_citizenship_and_race_cvap.html. (*See* Am. Compl. ¶ 6.)

Other federal district courts have held that substantively similar notice letters provided adequate notice under NVRA. For example, in *Judicial Watch v. King*, two organizations sued

---

[3] This data is compiled and submitted by election officials in Pennsylvania. In fact, before it is made public, it is "sent back to the States for review and verification," during which time "the Chief Election Official" of each State "must certify in writing that the information being presented to the EAC is true and accurate to the best of his/her knowledge." Election Assistance Commission, A Guide to the Election Administration and Voting Survey at 2-3, *available at* http://www.eac.gov/assets/1/Documents/FINAL%20Election%20Administration%20and%20Vot ing%20Survey%20Guide.pdf.

election officials in Indiana for failure to comply with the same list maintenance and public inspection requirements of the NVRA. 993 F. Supp. 2d 919, 920 (S.D. Ind. 2012). The plaintiff organizations demonstrated the defendant's potential failure to comply with the NVRA in their notice letter and complaint by a "comparison of [2010] Census data and voter registration data, which indicate[] that the numbers of persons registered to vote exceeded the total voting population" in several Indiana counties, and was implausibly high in other counties. *Id*. at 921. The defendants in Indiana argued that such allegations were insufficient to put the election officials on notice that a violation of the NVRA had occurred, and thus the NVRA's statutory notice provision had not been satisfied. *Id*. at 921. The court rejected the defendants' argument.

To satisfy the NVRA's notice provision, a notice letter "does not [need to] state unequivocally that a violation of the NVRA *has occurred*," the court explained. *Id*. at 922 (emphasis in original). Rather, it is enough that the letter speaks of an "apparent violation" or that "available information 'strongly suggests' non-compliance with the NVRA." *Id*.

The defendant in *Judicial Watch* claimed the notice letter lacked "sufficient details" about the alleged violations of the NVRA to satisfy the notice required. *Id*. The court, likewise, rejected this argument. "It is not surprising," the court explained, "that the Letter does not contain any detailed allegations, inasmuch as the NVRA provision at issue does not contain any detailed requirements; it simply requires 'reasonable efforts'" on the part of election officials. *Id*. Accordingly, the court held it is sufficient to plausibly state a violation of the NVRA to provide "the reasons" for the plaintiff's conclusion that the defendant has not complied with that general requirement. *Id*.

In another case, the Western District of Texas found that a nearly identical letter as the one here survived a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *ACRU v. Martinez-*

8

*Rivera*, Civil Action No. DR-14-CV-0026-AM/CW, 2015 U.S. Dist. LEXIS 177883 at *29 (W.D. Tex. Mar. 30, 2015). As here, the letter in Texas provided the proper statutory citations underpinning the alleged violations, set forth the organization's concerns that the "County 'has significantly more voters on the registration rolls than it has eligible live voters[,]'" and "urged the recipient to work toward full compliance with the NVRA, warning that the failure to do so could result in a lawsuit and citing the provision of the NVRA that allows a private party to bring suit." *Id*. As in *Martinez-Rivera*, ACRU's letter to Defendant "gives the Defendant enough information to diagnose the problem. At that point it was the Defendant's responsibility to attempt to cure the violation." *Id*. at *30.

**V.   Count II States a Valid Claim for a Violation of the NVRA by the Commissioners.**

When considering Commissioners' 12(b)(6) motion, ACRU "is afforded the safeguard of having all its allegations taken as true and all inferences favorable to [it] will be drawn." *Mortensen*, 549 F.2d at 891. "To survive a Rule 12(b)(6) motion to dismiss, a pleading 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Stanton v. City of Philadelphia*, 2011 U.S. Dist. LEXIS 19916, *4 (E.D. Pa. Feb. 28, 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotations and citations omitted).

While a complaint need not contain detailed factual allegations, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

**A.     The Amended Complaint States a Claim for Failure to Perform Adequate List Maintenance.**

The Commissioners' Motion to Dismiss seems to exclusively focuses on arguing that ACRU's complaint fails because the Commissioners' have no list maintenance obligations regarding ineligible incarcerated felon registrations in Pennsylvania. They ignore, however, that the maintenance of incarcerated felon registrations is only one part of ACRU's list maintenance claim. ACRU based its motion for a preliminary injunction specifically on felon registrations, but the Amended Complaint is not so limited; it makes a general claim of failure to comply with the general list maintenance provisions of NVRA. (Am. Compl. ¶ 29.)

Neither the Notice Letter nor the Amended Complaint claim that the Commissioners' violations of Section 8 extend only to the failure to ensure that ineligible registrants are not on the list of eligible voters. The Notice Letter gave notice that inadequate voter list maintenance is occurring based on improbable voter registration rates. Specific allegations concerning incarcerated felons were then made in the Amended Complaint. (Am. Compl. ¶¶ 6, 8, 11, 29.) The Commissioners do not address ACRU's general list maintenance allegations in their Motion to Dismiss.

**B.     The NVRA Obliges Election Officials to Produce Lists of Voters Containing Only Eligible Voters.**

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is improper with regard to Count II of the Amended Complaint because the NVRA, taken together with the HAVA, requires the appropriate election official not to produce lists of eligible voters including names of registrants who become ineligible to vote "as provided by State law." 52 U.S.C. § 20507(a)(3)(B). The various subsections of NVRA and HAVA that work together to impose this

obligation have been explained in detail in ACRU's response to the Court's show cause order. (Dkt No. 19.)

The Commissioners argue that NVRA and HAVA require election officials to only remove or otherwise process registrants who become ineligible by reason of a criminal conviction if there is a corresponding state statute that requires them to do so. (Defs.' Mot. to Dismiss 13-14.) According to the Commissioners, NVRA and HAVA do not contain any provisions that require them to conduct list maintenance regarding the names of ineligible felons in any way independent of state law. *Id.* But the Commissioners' reading of the plain language of 52 U.S.C. §§ 20507(c)(2)(A) and (a)(3)(B) is incorrect. Voter list maintenance of registrants "by reason of criminal conviction" is not required only if the list maintenance is "provided by State law." *Id.* Rather, those subsections, when read in conjunction with other sections of NVRA and HAVA that deal with felon registration—as those sections are understood by other federal courts—require reasonable list maintenance regarding those who are *ineligible*, including "as provided by State law, by reason of criminal conviction." 52 U.S.C. § 20507(a)(3)(b). The Commissioners are producing lists of eligible voters for use during elections that contain the names of individuals who are, pursuant to Pennsylvania law, not eligible to vote. This is not reasonable list maintenance.

The fundamental issue in this case comes down to a dispute over what the federal list maintenance provisions of NVRA and HAVA require. ACRU's position is that NVRA, as enhanced by HAVA, requires the removal of ineligible registrants (or the taking of some preventative steps to ensure they cannot receive or cast a ballot), whether they were ineligible to begin with or became ineligible after an initial legitimate registration. Under Pennsylvania law, incarcerated felons are ineligible to vote. 25 Penn. Stat. § 2602(w). At a minimum, the

11

Commissioners should undertake some minimal list maintenance steps to ensure that these ineligible registrants do not obtain or cast ballots. The Commissioners do not even inquire into the identity of the ineligible felon registrants. (Am. Compl. ¶ 15.)

ACRU's position is consistent with a reading of the overall list maintenance provisions of NVRA and HAVA. Commissioners' position, on the other hand, would require list maintenance regarding ineligible felons *only* when state law requires such maintenance. But Commissioners' position, if accepted, would render the maintenance provisions of NVRA and HAVA related to felons superfluous. In other words, under Commissioners' reading, federal law would only be requiring them to do list maintenance regarding ineligible criminals if state law is already requiring them to do that list maintenance. *See, e.g.*, *Corley v. United States*, 556 U.S. 303, 314 (2009) ("'[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant . . . .'" (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (additional citations and quotations omitted) (brackets in original)). Obligations under the NVRA remain operative even if state law does not specifically provide specific list maintenance procedures. The obligation under the NVRA to reasonably maintain the rolls and ensure that the lists of eligible voters do not include the names of ineligible individuals is a federal obligation. If the state deems incarcerated felons ineligible to vote, which Pennsylvania has, then the lists of eligible voters should not include their registrations.

Certain provisions of HAVA augment NVRA and require registrants on the rolls to be detected, noted, and acted upon for those rolls to be accurate and current, as required by the NVRA. 52 U.S.C. § 21083(a)(2)(A)(ii)(I). HAVA requires that each state have a statewide registration list, 52 U.S.C. § 21083(a)(1)(A), that is maintained by "the appropriate State or local election official," 52 U.S.C. § 21083(a)(2)(A), in such a way that "makes a reasonable effort to

remove registrants who are ineligible to vote from the official list of eligible voters," 52 U.S.C. § 21083(a)(4).

Election officials must make a reasonable effort to ensure that those who are not eligible cannot cast a ballot. When an election official makes no effort to detect or note the possibility of ineligible registrants due to incarcerated felony status, these federal list maintenance obligations are implicated by any fair reading of the statutes. These sections of HAVA—52 U.S.C. §§ 21083(a)(2) and (4)—expressly refer to and augment the General Maintenance Provision requirements of NVRA at 52 U.S.C. § 20507(a), while Section 21083(a)(2)(A)(i) does the same for 52 U.S.C. § 20507(a)(4) of NVRA.

It is clear from the language and section numbers in 52 U.S.C. § 21083(a) that that section of HAVA is intended to enhance the list maintenance requirements of Section 20507(a) of NVRA. Section 21083(a)(4), for example, mirrors the numbering and language of Section 20507(a)(4).  Section 20507(a)(4) requires "a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" for two specific reasons: death and change in residency. Section 21083(a)(4)(A) of HAVA broadens the requirement and creates a blanket mandate to make "a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters." The subsection numbers are identical and the language is almost identical. According to established rules of statutory interpretation, these should be interpreted to have related meanings and complimentary purposes. *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132-33 (2000). And the broader requirements in HAVA are to be performed "in accordance with the provisions of the National Voter Registration Act." 52 U.S.C. § 21083(a)(2)(A)(i). Finally, these HAVA requirements expressly do not supplant or limit the list maintenance requirements in NVRA. 52 U.S.C. § 21145.

Therefore, list maintenance done in accordance with 52 U.S.C. § 20507(a) includes the requirements in Section 20507(a) of NVRA, as enhanced by the requirements in Section 21083(a) of HAVA. By its express terms, Section 21083(a) does not create a new list maintenance scheme that supplants the one in Section 20507. Instead, Section 21083(a) enhances those requirements and becomes part of the General Maintenance Provision in NVRA.

Furthermore, Commissioners' position—that federal law requires no action at all with regard to the registrations of ineligible felons—is inconsistent with the other provisions of NVRA and HAVA that expressly deal with the criminal status of registrants. For example, U.S. attorneys are required to send written notice of felony convictions to the chief State election official for the obvious purpose of list maintenance. 52 U.S.C. § 20507(g)(1). (*See* Am. Compl. ¶ 16.) The chief State election official is required to pass along this information to the appropriate local voter registration officials. 52 U.S.C. § 20507(g)(5). ACRU submits that the only plausible reason for requiring this information to be sent to local election officials is so that they can make note of the registrants who are ineligible by reason of criminal status. Commissioners entirely ignore these provisions of federal law by doing nothing with regard to list maintenance involving incarcerated felons.

One U.S. District Court has expressly interpreted the "reasonable effort" language found in 52 U.S.C. § 20507(a)(4) to apply to the other subsections of Section 20507. *United States v. Missouri*, 2006 WL 1446356, at *8 (W.D. Mo. May 23, 2006). This finding was not controverted by the Eighth Circuit Court of Appeals. *See United States v. Missouri*, 535 F.3d 844 (8th Cir. 2008). The district court found that "common sense" and the "text" of Section 20507(a)(4) "suggests that Congress intended the 'reasonable effort' standard . . . to apply to subsections (b),

14

(c) and (d)," which includes the subsection treating removal of those who are ineligible because of criminal convictions. *Missouri*, 2006 WL 1446356 at *8.

### C.    There Is No Inherent Conflict Between NVRA and Pennsylvania Law.

Contrary to Commissioners' assertions, ACRU's Amended Complaint has described the relevant portions of Pennsylvania law regarding the eligibility of incarcerated felons to vote. (Defs.' Mot. to Dismiss 13-14.) The Commissioners draw several distinctions and observations that are not relevant. (Defs.' Mot. to Dismiss 14, n.12.) ACRU has never argued that anyone is deprived of voting rights in Pennsylvania "solely 'by reason of criminal conviction.'" (Defs.' Mot. to Dismiss 14.) The NVRA in all likelihood uses the phrase "criminal conviction" because the laws of the states vary widely with regard to when and whether criminals may vote. But the purpose of the NVRA provision is clear—if state law says that a person is rendered ineligible to vote by reason of a criminal status, however that is formulated under state law, that information should be used in the maintenance of the lists of eligible voters.

As ACRU has explained, in Pennsylvania, incarcerated felons are ineligible to vote. (Am. Compl. ¶¶ 12, 15, 16, 19.) ACRU has omitted no supposed distinctions under Pennsylvania law. It is irrelevant that those incarcerated for non-felonies may vote by absentee.[4] (Defs.' Mot. to Dismiss 14.) It is also irrelevant that incarcerated felons "are not qualified absentee electors," as opposed to simply stating that they are ineligible to vote as ACRU does. As the Commissioners must acknowledge, while a person is an incarcerated felon, they are ineligible to vote in

---

[4] Given that some incarcerated persons may vote while others may not, it would seem to be necessary to track in some manner which registered voters are incarcerated as felons as opposed to non-felons. As it stands, the Commissioners, by their own admission, have no way of knowing whether a person requesting an absentee ballot while incarcerated is eligible to vote or not. This is the core issue being challenged in Count II as being inconsistent with the list maintenance obligations of Section 8 of the NVRA.

Pennsylvania. (Defs.' Mot. to Dismiss 14, n.12.) Nowhere does ACRU suggest that all felons, including those who are released, should not be permitted to vote.

Turning to *Mixon*, Commissioners fail to mention a finding in that case that is relevant here. One of the groups of plaintiffs in that case were incarcerated felons who were not registered to vote. The court held that their claims failed as a matter of law and, therefore, they were not permitted to be registered to vote. *Mixon*, 759 A.2d at 444, 451. Commissioners have maintained that "felons ***are permitted*** to be registered to vote, regardless of whether they are incarcerated." (Dkt No. 22-1 at 10 (emphases in original).) But this is not an entirely accurate statement of the law according to *Mixon*. Incarcerated felons may not register to vote. *Mixon*, 759 A.2d at 444. The question of whether registered incarcerated felons must be removed from the rolls was not at issue in *Mixon* and was not expressly discussed by the court. Even if the case were not silent on the issue, given that *Mixon* predates the HAVA, with its enhancements to the NVRA list maintenance provisions, *Mixon* would not be determinative here.[5]

In addition to complying with the NVRA requirement to maintain accurate and current rolls that do not contain ineligible registrants, there are sound administrative reasons for doing list maintenance regarding ineligible felons in order to avoid even an accidental violation of the law. A felon could be registered immediately upon release, when he is once again an eligible voter.[6] The same could be said for citizens who are not yet of voting age. There are sound reasons for removing ineligible registrants from the voter rolls, and Congress has enacted laws

---

[5] Contrary to the Commissioners' observations to the contrary, (Defs.' Mot. to Dismiss n.15.), ACRU did predicate its list maintenance violation claim on both NVRA and HAVA and referred to HAVA in its Amended Complaint. (Am. Compl. ¶¶ 11, 29.)

[6] Presumably this is what happens with felons who were not registered before they were incarcerated, given that they can vote immediately upon being released.

requiring election officials to ensure that only eligible voters are on the rolls and that their information is accurate.

There is no inherent conflict between Pennsylvania law and the NVRA's directive to ensure that the voter rolls do not feature ineligible names, including incarcerated felons. Pennsylvania law states that registrants should only be removed in certain instances. 25 Pa.C.S.A. § 1901(a). Becoming an incarcerated felon is not mentioned as one of those instances. But Pennsylvania law does not affirmatively and expressly state that the registrations of incarcerated felons must not be cancelled or otherwise processed. Nor does *Mixon* state that incarcerated felon registrants must *not* be removed or processed either, as that question was not at issue in that case. NVRA, however, as explained above, affirmatively requires that ineligible registrants not appear on the list of eligible voters. Therefore, NVRA simply adds another category of registrant that should not be on the list of eligible voters. If a state deems that incarcerated felons are not eligible voters, then they should not be on the list of eligible voters.

In the alternative, the Commissioners must follow the list maintenance provisions of the NVRA, at least with respect to federal elections, because federal law here preempts state law. Therefore, even if the Commissioners are correct and there is some ambiguity between the voter list maintenance obligations of NVRA and Pennsylvania's failure to remove ineligible incarcerated felons from the list of eligible voters, federal law must prevail here. With respect to the application of NVRA, the Supreme Court has held that, where there is a conflict between state election laws and NVRA, the latter pre-empts state law. *See, e.g.*, *Kobach v. United States Election Assistance Comm'n*, 772 F.3d 1183, 1195 (10th Cir. 2014) ("[W]hen Congress acts pursuant to the Elections Clause, courts should not assume reluctance to preempt state law.") (citing *Arizona v. Inter Tribal Council of Ariz., Inc.*, 133 S. Ct. 2247, 2257 (2013)).

17

In *Arizona v. Inter Tribal Council*, Arizona had passed a law requiring election officials to reject federal registration forms that were not accompanied by documentary proof of citizenship. 133 S. Ct. at 2252. The NVRA, however, requires states to "accept and use" the federal form. *Id.* at 2253. This created a direct conflict between the requirements of the NVRA and Arizona's law. In that situation, the Supreme Court held that the NVRA pre-empts the state law adding additional requirements onto the federal form. *Inter Tribal*, 133 S. Ct. at 2257, 2260. Accordingly, the Arizona law was enjoined. Here, though ACRU submits that it is unnecessary to do so, if Pennsylvania law is found to prohibit what the NVRA requires with regard to the registrations of ineligible incarcerated felons, the NVRA must be followed.

**VI.     The Commonwealth Is Not a Necessary Party to this Action and Pennsylvania Law Is Not Implicated.**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(7) for failure to join a party is evaluated by "the standards set forth by [Fed. R. Civ. P.] 19(a) and (b)." *Malibu Media, LLC v. Does*, 2013 U.S. Dist. LEXIS 620, *11 (E.D. Pa. Jan. 3, 2013). "Federal Rule of Civil Procedure 19 specifies the circumstances in which the joinder of a particular party is compulsory." *General Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007). If the joinder of a party is compulsory "but joinder is not feasible for one reason or another, 'the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed.'" *Malibu Media, LLC*, 2013 U.S. Dist. LEXIS 620 at *12-13 (citing Fed. R. Civ. P. 19(b)). For example, the Court will consider "whether judgment rendered in the necessary party's absence would be adequate." *Id.* at 12. Only when "the court determines a party is indispensable," and joinder is not feasible, should the lawsuit be dismissed. *Id.* at 13.

Contrary to Commissioners' assertions, there is no necessary conflict between Pennsylvania law and the federal laws at issue here. (Defs.' Mot. to Dismiss 17.) As explained

above, Commissioners are incorrect that NVRA requires list maintenance regarding ineligible criminal registrations *only* when list maintenance is directed by the law of the Commonwealth. Rather, the NVRA requires list maintenance of the registrations of persons who are ineligible by reason of state law. This list maintenance obligation is required by operation of NVRA and HAVA.

As is explained above, the *Mixon* case (2000) predates the enhanced requirements of HAVA (2002) and is also silent on whether list maintenance is required regarding incarcerated felon registrations. Furthermore, Pennsylvania law does not need to be changed because the NVRA pre-empts state law with regard to voter list maintenance involving federal elections. There is no express language in Pennsylvania law prohibiting list maintenance regarding incarcerated felons. The NVRA simply adds another category of ineligible registrants that must be subject to list maintenance procedures in order to ensure accurate and current list of eligible voters. Therefore, the Commonwealth is not a necessary party and Count II should not be dismissed under Federal Rule of Civil Procedure 12(b)(7) for failure to join a necessary party.

**VII.   Conclusion**

For the reasons stated above, Plaintiff ACRU requests that Commissioners' Motion to Dismiss be denied. Now that ACRU has inspected and received copies of all list maintenance records requested, Count I has been satisfied as of today. Count II should not be dismissed because the Amendment Complaint states a plausible claim for relief under NVRA Section 8 from Commissioners' failure to engage in reasonable list maintenance to ensure that the names of ineligible registrants do not appear on the list of eligible voters. This claim does not implicate or conflict with Pennsylvania precedent or statutory law. Finally, Count II should not be dismissed because neither the Commonwealth nor any Commonwealth officials are a necessary

party to this action. Therefore, Commissioners' Motion to Dismiss Count II pursuant to Federal

Rules of Civil Procedure, 12(b)(1), 12(b)(6), and 12(b)(7) should be denied and this action

should be permitted to proceed.


Dated: August 29, 2016


Respectfully submitted,


For the Plaintiff ACRU:


J. Christian Adams*
Kaylan L. Phillips*
Joseph A. Vanderhulst*
PUBLIC INTEREST LEGAL FOUNDATION
209 W. Main Street
Plainfield, IN 46168
Tel: (317) 203-5599
Fax: (888) 815-5641
adams@publicinterestlegal.org
kphillips@publicinterestlegal.org
*Admitted Pro Hac Vice

 /s/ Linda A. Kerns
LAW OFFICES OF LINDA A. KERNS, LLC
Linda A. Kerns, Esquire
1420 Locust Street –Suite 200
Philadelphia, PA  19102
PA Atty ID 84495
Tel:  (215) 731-1400
Fax: (215) 701-4154
linda@lindakernslaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on August 29, 2016, I caused the foregoing to be filed with the

United States District Court for the Eastern District of Pennsylvania via the Court's CM/ECF

system, which will serve all registered users.

Dated: August 29, 2016

       /s/ Linda A. Kerns
LAW OFFICES OF LINDA A. KERNS, LLC
Linda A. Kerns, Esquire
1420 Locust Street –Suite 200
Philadelphia, PA  19102
PA Atty ID 84495
Tel:  (215) 731-1400
Fax: (215) 701-4154
linda@lindakernslaw.com