

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMERICAN CIVIL RIGHTS UNION | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action |
| v. | : | No. 16-01507-CDJ |
| | : | |
| PHILADELPHIA CITY COMMISSIONERS | : | |
| Defendant. | : | |

### DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1), 12(b)(6), and 12(b)(7)

Defendant, the Philadelphia City Commissioners (hereinafter "the City" or "Defendant"), by and through its undersigned counsel, hereby files this reply in Support of its Motion to Dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 12(b)(7), (Dkt. 22, "Defendant's Motion to Dismiss"), to address interpretations of fact and law advocated by the American Civil Rights Union ("Plaintiff" or the "ACRU"), in its Opposition to Defendant's Motion to Dismiss. (Dkt. 27, "Opposition Brief").

I. Count I Must Be Dismissed

In its Opposition Brief, the ACRU agrees that Count I of the FAC should be dismissed.[1] *See* Opposition Brief at 6. Although the Court need not address this claim further, Defendant emphasizes that the ACRU being "satisfied" with the information it received (which it apparently now is) has no bearing on the Court's consideration of Count I. Were Count I to have stated a claim (it does not), it would have been moot no later than April 18, 2016 (and possibly earlier). That the ACRU now agrees that it should be dismissed only emphasizes that Defendant

---

[1] The ACRU refers to its August 24, 2016, visit to the Voter Registration Office to review information as a "meet and confer" between the parties. Defendant does not agree with this characterization. While counsel for the ACRU attended the August 24, 2016 meeting to review of information along with its client, counsel for Defendant was not present as the appointment solely addressed the ACRU's review of information pursuant to its request. It was not a "meet and confer" as that term is typically understood and did not involve counsel discussing this litigation.

had responded to the ACRU information request long before the ACRU filed its Amended Complaint. Regardless, it is now undisputed that Count I may be dismissed.

### II. Count II Fails to State a Claim, and in Arguing Otherwise, the ACRU Misapprehends Federal And State Laws

Defendant moved to dismiss Count II because the ACRU lacked standing, had not complied with statutory requirements, and because Count II failed to state a claim as a matter of law under the National Voter Registration Act ("NVRA"). Recognizing that Defendant is in compliance with the plain language of the NVRA (*i.e.* that Defendant follows Pennsylvania law), the ACRU argues in its Opposition Brief that it has stated a claim under the NVRA as "enhanced" by the Help America Vote Act ("HAVA"). Opposition Brief at 11. In the ACRU's words, the "fundamental issue in this case comes down to a dispute over what the federal list maintenance provisions of NVRA and HAVA require." *Id.* But the ACRU does not have standing to bring a claim under HAVA,[2] and the ACRU's interpretation that HAVA is "intended to enhance the list maintenance requirements of . . . [the] NVRA" lacks any support other than the ACRU's own creative reading.

Were HAVA to change the NVRA's clear meaning and plain language – that voter registrations may only be removed "as provided by state law" – it would have included express language providing for that change. In fact, HAVA states just the opposite – rather than transforming or "enhancing" the NVRA, HAVA's requirements are to be performed "in accordance with" the NVRA. *See* 52 U.S.C. s. 21083(a)(2)(A)(i) ("If an individual is to be removed from the computerized list, such individual shall be removed in accordance with the provisions of the National Voter Registration Act of 1993. . . ."). The U.S. Election Assistance

---

[2] HAVA's enforcement provision provides only that "[t]he Attorney General may bring a civil action against any State or jurisdiction in an appropriate United States District Court for such declaratory and injunctive relief (including a temporary restraining order, a permanent or temporary injunction, or other order) as may be necessary to carry out the uniform and nondiscriminatory election technology and administration requirements under sections 21081, 21082, and 21083 of this title." *See* 52 U.S.C. § 21111. HAVA also defines "State" specifically, including the 50 states, the District of Columbia, Puerto Rico, Guam, American Samoa, and the U.S. Virgin Islands (but not referencing Philadelphia at all). See 52 U.S.C. § 20310.

Commission's guidance on HAVA that was issued to assist states reflects that the NVRA's requirements remain unchanged: "[n]othing in this guidance should be construed to alter, interpret or effect, in any way whatsoever, the requirements of the [NVRA], including requirements and timeframes with respect to the administration of voter registration and/or the process States must follow in removing names of registrants from the voting rolls." *See* U.S. Election Assistance Commission, *Voluntary Guidance on Implementation of Statewide Voter Registration Lists, July, 2005*, at 3 (available at http://www.eac.gov/assets/1/workflow_staging/Page/330.PDF) (visited September 6, 2016). For these reasons, and as argued in Defendant's Motion to Dismiss, Count II fails to state a claim as a matter of law.

Unable to entirely avoid the relevance of Pennsylvania law, the ACRU walks a fine line to argue (incorrectly) that *Mixon v. Com.*, 759 A.2d 442 (Pa. Commw. Ct. 2000), *aff'd*, 783 A.2d 763 (2001) does not address "[t]he question of whether registered incarcerated felons must be removed from the rolls." Opposition Brief at 16. To the contrary, *Mixon* noted that incarcerated felons are permitted to vote immediately upon release and that the "legislative enactments at issue here do not completely disenfranchise the convicted felon, as is the case in fourteen of our sister states; it merely suspends the franchise for a defined period." *Id.* At 448, n.11. In other words, it was clear in *Mixon* – and remains clear under Pennsylvania law – that individuals who are registered prior to being incarcerated for a felony do not have their registration cancelled (they are not removed from the voting rolls), but are merely not qualified absentee electors and therefore are not able to vote (via absentee ballot) while incarcerated. The ACRU implicitly accepts this point. *See* Opposition Brief at 17 (acknowledging that Pennsylvania law both identifies the circumstances under which a registrant should be removed and *does not* identify "becoming an incarcerated felon" as one such circumstance).

3

Contrary to the ACRU's assertion, were this Court to accept the ACRU's interpretation of the NVRA (as 'enhanced' by HAVA), the NVRA and Pennsylvania law would be in direct conflict.[3] And were the ACRU to prevail on its claim, the Commonwealth of Pennsylvania is indeed a necessary party to this litigation as the very meaning of Pennsylvania law would be changed.[4]

Count I is moot and not only does Count II fail to state a claim, Plaintiff has also failed to join a necessary party. For the reasons discussed herein, as well as those set forth in Defendant's Motion to Dismiss, Defendant respectfully requests that the Motion to Dismiss be granted and the ACRU's claims against the Philadelphia City Commissioners be dismissed with prejudice.

Respectfully submitted,

Date: September 6, 2016

/s/ Benjamin H. Field
Kristin Kathryn Bray, Chief Deputy City Solicitor
Benjamin H. Field, Deputy City Solicitor
City of Philadelphia Law Department
1515 Arch Street, 17th Floor
Philadelphia, PA 19102
(215) 683-5408
kristin.bray@phila.gov
benjamin.field@phila.gov

---

[3] In an attempt to preserve Count II, the ACRU argues that it has plausibly stated a claim for failure to maintain voter registration lists because it alleged that Philadelphia County "has nearly more registrants than eligible citizens living in the county." Amended Complaint, ¶6. This, however, is unlike the specific allegations in *Judicial Watch, Inc. v. King*, 993 F.Supp.2d 919 (S.D. Ind. 2010), cited by the ACRU in its Opposition Brief. *See* id. at 921 (noting that the notice letter discussed "a comparison of 2010 Census data and voter registration data, which indicates that the number of persons registered to vote **exceeded** the total voting population in twelve Indiana counties") (emphasis added). The ACRU's Amended Complaint attempts to state a claim that Defendant fails to perform required actions with respect to incarcerated felons. Any other attempt to massage the pleading to claim that it plausibly states a claim because a lot of people are registered to vote should be dismissed with prejudice.

[4] Any remedy would also require the Commonwealth to be joined as a party to this action as such a remedy would require all counties in Pennsylvania to coordinate their efforts, take actions regarding the registration of incarcerated felons (who could be incarcerated anywhere in Pennsylvania and, indeed, anywhere in the U.S.), and develop controls to protect the due process rights of those individuals who would have their registrations cancelled. Because Pennsylvania law requires no such actions – choosing instead to determine that incarcerated felons are not qualified absentee electors but can remain registered to vote – it sets forth no such procedural protections.

4