IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| AMERICAN CIVIL RIGHTS UNION, | : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | NO. 16-1507 |
| | : | |
| PHILADELPHIA CITY COMMISSIONERS, | : | |
| Defendant. | : | |
| | : | |

**Jones, II    J.**                                                  **September 9, 2016**

**MEMORANDUM**

Now pending before the Court is Defendant's Motion to Dismiss [hereinafter "MTD"], (Dkt No. 22), Plaintiff's Response in Opposition [hereinafter "Resp."], (Dkt No. 27), and Defendant's Reply Memorandum of Law in Support of Its Motion to Dismiss [hereinafter "Reply"], (Dkt No. 28).

For the reasons that follow, Defendant's Motion to Dismiss will be granted and Plaintiff will be afforded leave to amend its complaint insofar as it seeks to plead a general violation of the list maintenance procedures.

## I.    BACKGROUND

The facts as alleged in Plaintiff's Amended Complaint [hereinafter "A.C."], (Dkt No. 16), are as follows:

On January 26, 2016, Plaintiff, the American Civil Rights Union ("ACRU"), wrote a letter [hereinafter "Notice Letter"] to the Philadelphia City Commissioners ("Defendant"), copying Pennsylvania Secretary of State Pedro A. Cortés, regarding "an apparent violation of Section 8 of the National Voter Registration Act." (A.C. ¶ 6; Ex. A.) In said letter, Plaintiff stated that the County "had nearly more registrants than eligible citizens and may not be conducting reasonable list maintenance to ensure noncitizens are not improperly registering to vote." (A.C. ¶ 6; Ex. A.) To comply with Section 8 of the National Voter Registration Act ("the NVRA"), Plaintiff indicated that "it would be helpful if [Defendant] could provide" records and information covered under the NVRA. (A.C. ¶ 8.) Plaintiff's records and information request is produced below:

(a) updated registration data since the publication of the 2014 EAC report;

(b) records your office obtained or received from the Pennsylvania Circuit Court Clerk, United States District Court clerks or other sources regarding individuals who were ineligible to serve on juries because of lack of American citizenship, death or relocation out of the jurisdiction, including but not limited to records concerning juror qualification questionnaires – whether completed via the Internet or returned through the mail – on which the individual that completed the questionnaire indicated that he or she is not a United States citizen, please include subsequent list maintenance records produced pursuant to inquiries based on this information;

(c) the number of ineligible voters purged by category (e.g. dead, duplicate, ineligible) and by date;

(d) the source agency that provided the identifying information of the purged deceased and when the data was provided;

(e) the number of notices sent to inactive voters since the publication of the 2014 EAC Report including the date, scope and contents of any countywide mailing to all registered voter;

(f) the names of the staff in your office responsible for conducting list maintenance obligations who may appear on list maintenance records or who alter list maintenance records in furtherance of the duties of the office;

(g) the number of ineligible voters removed for criminal conviction, if applicable, and the date of the most recent dataset containing criminal convictions against which you compared voter lists, including communications with other agencies regarding criminal convictions;

(h) the total number of voters registered in your county as of the date of your response;

(i) any records indicating the use of citizenship or immigration status for list maintenance activities, including but not limited to the Systematic Alien Verification for Entitlements (SAVE) Program database. Any other records produced in reliance on other sources of citizenship verification data;

(j) all list maintenance records including federal voter registration forms containing citizenship eligibility questionnaires for the last 22 months

(A.C., Ex. A.) Plaintiff added that its letter "serves as the statutory notice…required under 52 U.S.C. § 20510(b) prior to the commencement of any lawsuit," and that the NVRA contains a private right of action under which a suit may be filed twenty (20) days after the receipt of the notice. (A.C., Ex. A)

On April 4, 2016, 68 days after mailing the January 26, 2016 letter to Defendant, Plaintiff filed a Complaint [hereinafter "Compl."], (Dkt No. 1), containing only one count which alleged that Defendant failed to produce the aforementioned records and information in violation of the NVRA. (Compl. ¶¶ 11-16.) Plaintiff repeated the records complaint as Count I of its Amended Complaint. Plaintiff, however, now states that its records requests have been satisfied and does not contest the Motion to Dismiss as to Count I. (Resp. at 6.)

2

On June 30, 2016, Susan Carleson, President of ACRU, met with the Office of the Philadelphia City Commissioners. (A.C. ¶ 14.) At the meeting, Defendant stated that it does not remove the names of convicted felons who are confined in penal institutions from the voter rolls in Philadelphia. (A.C. ¶ 14.) Defendant further stated that it does not receive nor request information regarding the names of incarcerated felons from state or local law enforcement. (A.C. ¶ 15.) Defendant likewise does not receive nor request information regarding the names of incarcerated felons from the United States Attorney. (A.C. ¶ 16.) Defendant does not make any notation to identify felons on the voter rolls. (A.C. ¶ 17.)

Plaintiff states that "Defendants [sic][1] are in noncompliance with the NVRA because they have failed to remove or notate registrants who are incarcerated felons and have failed to communicate with state and local law enforcement agencies and U.S. Attorneys regarding identifying felons." (A.C. ¶ 19.) In Count II, Plaintiff alleges that this practice is in violation of Section 8 of the NVRA and 52 U.S.C. § 21083(a)(2)(A). (A.C. ¶ 30.) Plaintiff requests a declaration that Defendant is in violation of Section 8 of the NVRA and an injunction ordering Defendants to conduct reasonable list maintenance that removes the names of ineligible registrants from the rolls. (A.C., Prayer for Relief.)

Plaintiff, contemporaneous with filing for leave to amend its complaint, filed a Motion for Preliminary Injunction, [hereinafter Mot. for P.I.], (Dkt No. 14), to enjoin Defendant "from violating Section 8 of the NVRA by failing to remove ineligible felon registrants from the Philadelphia County's voter registration rolls." (Mot. for P.I. at 4.) Plaintiff relied on 52 U.S.C. 20507(a)(4) for the proposition that "[t]he NVRA requires Defendants to make a 'reasonable effort to remove the names of ineligible registrants from the official lists of eligible voters,' including voters ineligible by virtue of felony conviction." (Mot. for P.I. at 6.) Because this explanation of the law grossly misrepresented the plain language of the statute, this Court issued an Order to Show Cause as to why Plaintiff's motion should not be stricken and why sanctions should not issue. (Dkt No. 15.) In its Response, (Dkt No. 19), Plaintiff admitted that its citation to 52 U.S.C. § 20507(a) was incomplete and argued that the NVRA, taken together with the requirements of the Help America Vote Act ("HAVA"), supports its legal contentions. In light of

---

[1] Plaintiff repeatedly uses "Defendants" to refer to the Philadelphia City Commissioners. Although the title of the office itself is plural, the office is still only one defendant. Therefore, because there are not multiple defendants, the Court will properly refer to the Philadelphia City Commissioners as "Defendant." However, the Court will quote Plaintiff's brief as written.

Plaintiff's Response, the Court placed Plaintiff on notice of the importance of accurate citations, but ordered that sanctions should not issue at such time. (Dkt No. 21.)

On August 8, 2016, Defendant filed its Motion to Dismiss the Amended Complaint, with a supporting Memorandum of Law. (Dkt No. 22.) Defendant moves to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6) and 12(b)(7). (MTD at 2.) First, Defendant maintains that Plaintiff failed to establish a basis for jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) because it failed to provide the proper notice required by the NVRA. (MTD at 4.) Second, Defendant argues that Count II fails as a matter of law because Defendant is not required to remove incarcerated felons from voter rolls. (MTD at 4.) Third, and finally, Defendant argues that Plaintiff's real issue is with the laws of the Commonwealth of Pennsylvania and therefore the Amended Complaint should be dismissed for failure to join the Commonwealth as a necessary party under 12(b)(7). (MTD at 4.)

## II.   <u>LEGAL STANDARDS</u>

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation and citation omitted). After the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citing *Twombly*, 550 U.S. at 556). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678; *accord Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("[A]ll civil complaints must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (internal quotation marks omitted).

A challenge to subject matter jurisdiction under Rule 12(b)(1) may take two forms: a facial challenge or a factual challenge. If a facial challenge is made, the trial court is restricted to a review of the allegations of the complaint and any documents referenced therein. G*ould Elec. Inc. v. United States*, 220 F.3d 169, 177 (3d Cir. 2000.) Further, "the trial court must consider the

allegations of the complaint as true." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

"When considering a motion to dismiss for failure to join a necessary party under Rule 12(b)(7), under Rule 19(a), the Court must decide whether an absent party is necessary for the action." *Markocki v. Old Republic Nat. Title Ins. Co.*, 527 F. Supp. 2d 413, 419 (E.D. Pa. 2007) (citing *Barrett v. Ambient Pressure Diving, Ltd.*, 235 F.R.D. 263, 268 (E.D. Pa. 2006)). "The Rule states that a party is necessary when: (1) the existing parties cannot obtain complete relief without that party or (2) the non-party's absence may harm the person's ability to protect an interest, or subject the current parties to a substantial risk of incurring 'double, multiple or otherwise inconsistent obligations by reason of the claimed interest.'" *Id.* (citing FED. R. CIV. P. 19(a)). "However, if joinder of a necessary party is impossible, under Rule 19(b), the Court must decide if the party is indispensable or whether the case can continue 'in equity and good conscience.'" *Id.* (quoting FED. R. CIV. P. 19(b)). If the absent party is indispensable the case must be dismissed. *Id.* (citing *Barrett*, 235 F.R.D. at 268). "In reviewing a motion under Rule 12(b)(7), we must accept as true the allegations in the complaint and draw all reasonable inferences in the non-moving party's favor." *Scottsdale Ins. Co. v. RSE Inc.*, 303 F.R.D. 234, 235 (E.D. Pa. 2014).

## III.   DISCUSSION

### a.   *The Notice Provision Of The NVRA Is Nonjurisdictional And Therefore Dismissal For Lack of Jurisdiction Will Be Denied On Such Grounds*

The National Voter Registration Act permits a person aggrieved by a violation of the Act to bring a civil action after the person has provided notice of the violation and the violation is not corrected within 20 days if the violation occurred within 120 days before the date of an election for Federal Office. 52 U.S.C. 20510(b). Defendant argues that Plaintiff failed to comply with this notice provision and that the failure divests this Court of subject matter jurisdiction. Plaintiff does not contest that the notice provision is jurisdictional, but argues that its letter was sufficient to satisfy the provision. As a preliminary matter, the Court notes that whether the notice provision affects the subject matter jurisdiction of the Court, although not raised by the parties, is questionable. *Gonzalez v. Thaler*, __ U.S. __, 132 S. Ct. 641, 648 (2012) (requiring Congress to use clear language indicating a bar to suit is jurisdictional).

The Supreme Court has "pressed a stricter distinction between truly jurisdictional rules, which govern 'a court's adjudicatory authority,' and nonjurisdictional 'claim-processing rules,' which do not." *Id.* (citing *Kontrick v. Ryan*, 540 U.S. 443, 454-55 (2002)). "A rule is jurisdictional '[i]f the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional.'" *Id.* (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515 (2006)). "Absent such a clear statement, . . . 'courts should treat the restriction as nonjurisdictional.'" *United States v. Kwai Fun Wong*, __ U.S. __, 135 S.Ct. 1625, 1632, (2015) (quoting *Sebelius v. Auburn Regional Medical Ctr.*, __ U.S. __, 133 S.Ct. 817, 824 (2013)). Here, 52 U.S.C. § 20510(b) has no such clear statement. Therefore, the Court cannot agree that the notice provision is jurisdictional.

Instead, failure to comply with the statutory notice provision would deprive Plaintiff of statutory standing, which is not jurisdictional. *See, e.g.*, *Georgia State Conference of N.A.A.C.P. v. Kemp*, 841 F. Supp. 2d 1320, 1335 (N.D. Ga. 2012) (recognizing that "no standing is therefore conferred if no proper notice is given" in accordance with the NVRA Section 11); *see also Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 320 (3d Cir. 2015) ("Unlike Article III standing, statutory standing is not jurisdictional."). "Statutory standing goes to whether Congress has accorded a particular plaintiff the right to sue under a statute, but it does not limit the power of the court to adjudicate the case." *Leyse*, 804 F.3d at 320. "As a result, '[a] dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim,' and a motion to dismiss on this ground is brought pursuant to Rule 12(b)(6), rather than Rule 12(b)(1)." *Id.* (quoting *Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 73-74 (3d Cir. 2011)).

### b. *Plaintiff Satisfied the Notice Provision Of The NVRA And Therefore Dismissal For Failure To State Claim Will Be Denied On Such Grounds*

In light of the foregoing, this Court will interpret Defendant's challenge to Plaintiff's notice as a motion to dismiss for failure to state a claim pursuant to 12(b)(6). As the Court previously stated, the NVRA permits a person aggrieved by a violation of the Act to bring a civil action after the person has provided notice of the violation and the violation is not corrected within 20 days if the violation occurred within 120 days before the date of an election for Federal Office. 52 U.S.C. 20510(b).

Defendant moves to dismiss the Amended Complaint on the basis that Plaintiff failed to plead "facts indicating that it provided the City notice regarding the violations it alleges in Count

II of the Amended Complaint." (MTD at 12.) Plaintiff responds that the letter "states in no uncertain terms that the Commissioners are 'failing to comply with Section 8 of the National Voter Registration Act (NVRA)' by not making 'a reasonable effort to maintain voter registration lists free of dead voters, ineligible voters and voters who have moved away.'" (Resp. at 7 (quoting Ex. A).) This aligns with Plaintiff's allegation in Count II that Defendant "failed to make reasonable efforts to conduct voter list maintenance programs, in violation of Section 8 of NVRA, 52 U.S.C. § 20507 and 52 U.S.C. § 21083(a)(2)(A)." (A.C. ¶ 29.) Furthermore, the Notice Letter specifically states that "[t]his letter serves as the statutory notice to your county, required by 52 U.S.C. § 20510(b0 Prior to the commencement of any lawsuit in order to enforce provisions of Section 8 of the NVRA, 52 U.S.C. § 20507." (Ex. A at 2.) Therefore, even though the Notice Letter included equivocal language, the quoted language was nonetheless sufficient to provide Defendant the requisite notice. As a result, the Court will deny Defendant's motion to dismiss the Amended Complaint for inadequate notice.[2]

c. ***Count II of Plaintiff's Amended Complaint Fails To State A Claim Upon Which Relief May Be Granted And Therefore Must Be Dismissed***

  i. The Claim In Count II That Alleges A Violation of List Maintenance Provisions By Failing To Remove Incarcerated Felons From Voter Rolls Is Dismissed With Prejudice For Legal Insufficiency

The parties do not dispute any facts relevant to the outcome of Count II of Plaintiff's Amended Complaint to the extent it alleges a violation of law by failing to remove convicted felons from voter rolls; the parties only dispute the applicable laws. Therefore, it is necessary at this stage for the Court to decide whether there is a legal basis for Count II of Plaintiff's Amended Complaint. There are essentially two parts to Plaintiff's allegation that Defendant has failed to make reasonable efforts to remove incarcerated felons from voter rolls in violation of Section 8 of the NVRA, 52 U.S.C. § 20507 and 52 U.S.C. § 21083(a)(2)(A). (A.C. ¶ 29.) First, that Defendant is "in noncompliance with the NVRA because they [sic] have failed to remove or

---

[2] Defendant briefly argues that it is also an improper party under the NVRA because Section 20510(b) provides a private right of action against a State, which is defined as "a State of the United States and the District of Columbia," but does not include a county. 52 U.S.C. § 20502(4). Although, in response to Defendant's First Motion to Dismiss, Plaintiff responded to the argument regarding whether or not the County is obligated to provide records under Count I, Plaintiff does not respond to the broader argument raised by Defendant in the now pending Motion to Dismiss. Because the issue has not been properly briefed by either side, the Court will not address it at this time.

notate registrants who are incarcerated felons" and, second, "have failed to communicate with state and local law enforcement agencies and U.S. Attorneys regarding identifying felons." (A.C. ¶ 19.) Defendant moves to dismiss Count II on the basis that federal law does not require such actions and therefore Defendant is not in violation of the law.

Plaintiff relies on 52 U.S.C. § 20507, which is part of the NVRA, as enhanced by 52 U.S.C. § 21083(a)(2)(A), which is part of HAVA, to support its allegations against Defendant. As a preliminary matter, however, the Court must note that there is no private right of action under HAVA. In addition, there is a circuit split as to the issue of whether plaintiffs are even able to use 42 U.S.C. § 1983 to seek enforcement of HAVA. *Compare Colon-Marrero v. Velez*, 813 F.3d 1, 13 (1st Cir. 2016) (recognizing there is no private right of action under HAVA, but permitting a Section 1983 suit); *Sandusky Cty. Democratic Party v. Blackwell*, 387 F.3d 565, 572 (6th Cir. 2004) (same); *with Crowley v. Nevada ex rel. Nevada Sec'y of State*, 678 F.3d 730, 735 (9th Cir. 2012) (recognizing there is no private right of action under HAVA, and foreclosing a Section 1983 suit). However, the language of the statute and persuasive case law are clear: there is no private right of action under HAVA.

As a result, Plaintiff attempts to use the private right of action provided under the NVRA to enforce, not the explicit terms of the NVRA itself, but the NVRA as enhanced by HAVA. (Resp. at 10.) There are two serious problems with this approach. First, Congress explicitly provided a private right of action under the NVRA while omitting such language from HAVA, which this Court cannot ignore. Second, even if the requirements of HAVA were enforceable through the NVRA, the two statutes taken together do not require, as a matter of law, the removal of incarcerated felons in the Commonwealth of Pennsylvania.

*(a) There Is No Private Right Of Action Under The Help America Vote Act*

First, in enacting the Help America Vote Act, Congress specifically included a section entitled "Enforcement." 52 USC Subtitle II, CHAPTER 209, SUBCHAPTER IV. Pursuant to Subchapter IV, only the Attorney General is empowered to seek declaratory and injunctive relief to enforce the Act. 52 U.S.C. § 21111. In addition, certain states are required to establish administrative procedures by which to adjudicate complaints of violations of the Act. 52 U.S.C. § 21112. This is in stark contrast to the language of the NVRA, which explicitly enacted a section entitled "Civil enforcement and private right of action." 52 U.S.C. § 20510. When

Congress enacted HAVA and provided for enforcement mechanisms, but not a private right action, it is assumed that Congress intentionally excluded such a private right of action. This Court will not ignore Congress's intentions. *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758–60 (3d Cir. 2009) ("The role of the courts in interpreting a statute is to give effect to Congress's intent.") (quoting *United States v. Diallo*, 575 F.3d 252, 256 (3d Cir. 2009)). Second, even if HAVA provided a private right of action through the NVRA, the claim related to removal of incarcerated felons in Count II fails as a matter of law because it is contrary to the plain language of the statutes.

*(b) Federal Law Does Not Require The Removal Of Incarcerated Felons From Voter Registration Rolls In Pennsylvania*

Plaintiff alleges that Defendant is in violation of Section 8 of the NVRA by failing to make reasonable efforts to remove ineligible voters because Defendant does not remove incarcerated felons from voter registration rolls. Plaintiff's Amended Complaint relies on various provisions of the NVRA including: Sections 20507(a)(4), 20507(d)(3), and 20507(c)(2)(A). (A.C. ¶¶ 11, 13.) None of these provisions, however, requires the Commonwealth to remove incarcerated felons from voter registration rolls.

1. 52 U.S.C. § 20507(a)(4) Only Requires The Removal Of Voters Who Are Ineligible By Reason Of Death Or Change In Address

Plaintiff first relies on Section 20507(a)(4), which Plaintiff alleges "requires Defendants [sic] to 'conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters….' 52 U.S.C. § 20507(a)(4)." (A.C. ¶ 11.) The portion of the statute excluded by Plaintiff's ellipses, however, limits the obligation to voters who are ineligible "by reason of - (A) the death of the registrant; or (B) a change in the residence of the registrant, in accordance with subsections (b), (c), and (d)." Under the plain meaning rule, where the statutory language "admits of no more than one meaning the duty of interpretation does not arise and the rules which are to aid doubtful meanings need no discussion." *Abdul–Akbar v. McKelvie*, 239 F.3d 307, 313 (3d Cir. 2001) (en banc). Here, there is no ambiguity in the statute. Section 20507(a)(4) explicitly requires reasonable efforts to remove voters ineligible by reason of death or a change of residence. It does not require the removal of incarcerated felons. Therefore, Plaintiff's claim cannot proceed under this subsection.

2.   52 U.S.C. § 20507(d)(3) Only Requires The Correction Of Voter Rolls Based On A Change Of Residence

Plaintiff next alleges that "election officials such as Defendants are specifically obliged to carry out these list maintenance duties and remove ineligible registrants from the rolls pursuant to 52 U.S.C. § 20507(d)(3)." (A.C. ¶ 11.) Section 20507(d)(3) states that "[a] voting registrar shall correct an official list of eligible voters in elections for Federal office in accordance with change of residence information obtained in conformance with this subsection." Again, there is no ambiguity in the plain language of this portion of the statute. Section 20507(d) establishes procedures for determining whether there has been a change of residence in (d)(1) and (d)(2). Then, in (d)(3), it requires registrants to correct voter lists in accordance with the information gained from the procedures set out in the subsection. At no point does the subsection make any reference to incarcerated felons or voters made ineligible by any reason other than a change in residence. The plain language is clear and Plaintiff's claim cannot proceed under this subsection.

3.   52 U.S.C. § 20507(c)(2)(A) Only Requires That Programs To Systematically Remove Ineligible Voters Be Completed 90 Days Prior To A Federal Election

Plaintiff next alleges that "Section 8 of the NVRA also requires that Defendants shall 'complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters.' 52 U.S.C. § 20507(c)(2)(A)." (A.C. ¶ 13.) Plaintiff initially alleged that this subsection applied to the removal of incarcerated felons. (Dkt No. 14, Mot. for P.I. at 5.) Plaintiff then reversed course and alleged that incarcerated felons may be removed even within the 90-day window. (Dkt No. 19, Resp. to Order to Show Cause at 7.) The Court agrees that an exception to the 90-day window exists for the removal of registrants "as provided by State law, by reason of criminal conviction." 52 U.S.C. § 20507(a)(3)(b); *see also* 52 U.S.C. § 20507(c)(2)(B)(i) (creating an exception for the removal of names pursuant to paragraph (3)(B)). This makes logical sense as well because, if a state chooses to enact a program to remove registrants based on criminal convictions, it would become impossible to remove registrants convicted within 90 days of a Federal election even if state law provided for such removal. But even though the statute *permits* States to remove registrants with criminal

10

convictions within 90 days of a Federal election, it still does not *require* the removal of such registrants as the Court will now address.

4. 52 U.S.C. § 20507(a)(3)(B) Permits But Does Not Require The Removal Of Incarcerated Felons As Provided By State Law

The only provision of the NVRA that, by its terms, addresses the removal of convicted felons is Section 20507(a)(3)(B). Section 20507(a)(3)(B), however, is permissive rather than mandatory:

> In the administration of voter registration for elections for Federal office, each State shall-
> (3) provide that the name of a registrant may not be removed from the official list of eligible voters except-
> (A) at the request of the registrant;
> (B) as provided by State law, by reason of criminal conviction or mental incapacity; or
> (C) as provided under paragraph (4);

Plaintiff argues that the language of § 20507(a)(3)(B), taken together with the language of § 20507(c)(2)(A), "when read in conjunction with other sections of the NVRA and HAVA that deal with felon registration—as those sections are understood by other federal courts[3]—require reasonable list maintenance regarding those who are ineligible, including 'as provided by State law, by reason of criminal conviction.'" (Resp. at 11.) Defendant argues that "[t]he plain language of the NVRA is clear: removal of names 'by reason of criminal conviction' is only to happen 'as provided by state law.'" (MTD at 13.) Plaintiff responds that "under Commissioners' reading, federal law would only be requiring them to do list maintenance regarding ineligible criminals if state law is already requiring them to do that list maintenance." (Resp. at 12.) But this ignores that the language of its statute which, by its terms, is not intended to *require* the removal of ineligible criminals. Instead, the language of the statute generally prohibits the removal of voters, but *permits* removal of voters as provided by State law, by reason of criminal conviction. Therefore, although the statute generally prohibits the removal of voters from registration rolls, it creates an exception for states to do so as provided by State law for criminal convictions. As a result, Plaintiff's argument that the federal statute would be redundant by requiring only what state law already requires is unfounded because the federal statute does not in fact *require* such removal.

---

[3] Plaintiff does not provide citations to any federal case law.

5.  52 U.S.C. § 21083(a)(2)(A) Only Requires That, If States Remove Convicted Felons From Voter Rolls, They Coordinate With State Agency Records On Felony Status

The Help America Vote Act, through Section 21083, creates "computerized statewide voter registration list requirements and requirements for voters who register by mail." Section 21083 makes only one reference to voters who are convicted felons. Section 21083(a)(2)(A) directs that:

> The appropriate State or local election official shall perform list maintenance with respect to the computerized list on a regular basis as follows:
>> (ii) For purposes of removing names of ineligible voters from the official list of eligible voters-
>>> (I) under section 8(a)(3)(B) of such Act (42 U.S.C. 1973gg–6(a)(3)(B)) [now 52 U.S.C. 20507(a)(3)(B)], the State shall coordinate the computerized list with State agency records on felony status[.]

The applicable subsection of HAVA addresses removing names of ineligible voters under the NVRA § 20507(a)(3)(B). It requires that, "for purposes of removing names of ineligible voters from the official list of eligible voters, . . . the State shall coordinate the computerized list with State agency records on felony status." While the statute does obligate officials to perform regular list maintenance, it creates no requirement that states remove incarcerated felons. Instead, it requires that, if the State does remove felons, that it does so in coordination with State agency records. This is further supported by the reference to § 20507(a)(3)(B), which permits, without requiring, the removal of voters made ineligible by virtue of criminal conviction in accordance with State law. HAVA supplements the NVRA by requiring States that choose to remove voters who have faced criminal convictions to do so in a reasonable manner, by coordinating the list with State agency records on felony status. A reading of the plain language of this subsection of HAVA makes clear that it does not require the removal of convicted felons, instead it requires that if a State removes voters with criminal convictions, as is permitted by the NVRA, the State must do so reasonably. The plain reading of the statute is a logical one; a contrary interpretation would require the removal of registrants based on felony status, even when certain States never deprive felons from the right to vote. Therefore, even if Plaintiff had a private right of action under HAVA, Plaintiff's claim could not proceed under this subsection.

6.  52 U.S.C. § 20507(g) Is Not Rendered Superfluous By Reading The Applicable Statutes Not To Require The Removal Of Incarcerated Felons

Plaintiff argues that reading the NVRA and HAVA not to require the removal of incarcerated felons renders superfluous § 20507(g), which establishes requirements for sharing information regarding convictions. (Resp. at 14.) Section 20507(g) requires that "[o]n the conviction of a person of a felony in a district court of the United States, the United States attorney shall give written notice of the conviction to the chief State election official[.]" 52 U.S.C. § 20507(g)(1). This subsection applies to all States, even States where felony convictions have absolutely no effect such as Maine and Vermont. Congress's intent in creating such a requirement to apply uniformly, even when the information may have no effect in certain states, is made clear by the language used in Section 20507(g)(3). An additional requirement of the subsection is that the United States Attorney provide such information "[o]n request of the chief State election official of a State or other State official with responsibility for determining the effect that a conviction may have on an offender's qualification to vote[.]" 52 U.S.C. § 20507(g)(3). While the information obtained from the U.S. Attorney may not lead to any result necessarily, it is important for the applicable state official to at least have that information in order to make such a decision.

The statute additionally requires the information to be passed down from State officials to local officials. 52 U.S.C. § 20507(g)(5).  Plaintiff "submits that the only plausible reason for requiring this information to be sent to local election officials is so that they can make note of the registrants who are ineligible by reason of criminal status." (Resp. at 14.) But Plaintiff is assuming that this information necessarily includes "registrants who are ineligible by reason of criminal status." In fact, the information must be passed along regardless of whether the offender is then made ineligible. The statute, by its plain meaning, requires the information be provided in every state and for every offender about which the state receives information. This is true even in a State where a conviction will undoubtedly have no effect, such as Maine or Vermont. This helps demonstrate that a statute which requires only information sharing by its plain terms, should not be read to impose any further requirements than stated. Just because the information sharing will not lead to any action being taken in certain states does not mean that the subsection is rendered superfluous. Information sharing in itself is important, and ensures that all states will

13

have the information necessary regarding federal convictions, whether that information is acted upon or not. The statute, by its plain language, requires only information sharing. To read any requirements into the statute beyond that is improper.

> 7. 52 U.S.C. § 21083(a)(4) Requires Reasonable Effort To Remove Ineligible Voters, But Incarcerated Felons Are Not Ineligible Voters Under Pennsylvania Law

Finally, Plaintiff relies on HAVA § 21083(a)(4) for the proposition that the requirements of NVRA Section 20507(a)(4) have been broadened and it now "creates a blanket mandate to make 'a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters.'" (Resp. at 13.) The applicable section of HAVA states as follows:

> (4) Minimum standard for accuracy of State voter registration records
> The State election system shall include provisions to ensure that voter registration records in the State are accurate and are updated regularly, including the following:
>> (A) A system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters. Under such system, consistent with the National Voter Registration Act of 1993 (42 U.S.C. 1973gg et seq.) [now 52 U.S.C. 20501 et seq.], registrants who have not responded to a notice and who have not voted in 2 consecutive general elections for Federal office shall be removed from the official list of eligible voters, except that no registrant may be removed solely by reason of a failure to vote.
>> (B) Safeguards to ensure that eligible voters are not removed in error from the official list of eligible voters.

52 U.S.C. § 21083(a)(4). By its plain terms, subsection (a)(4) requires "reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters." Therefore, if incarcerated felons are ineligible voters in the Commonwealth of Pennsylvania, then HAVA would require reasonable efforts to remove them. Whether or not felons are eligible voters is a question of state law. Therefore this Court turns to the laws and cases of Pennsylvania.

Plaintiff alleges that "[c]onvicted felons who are confined in a penal institution are not qualified to vote in Pennsylvania. 25 PA. CONS. STAT. ANN. § 1301 and 25 PA. STAT. ANN. § 3146.1." (A.C. ¶ 12.) Section 1301(a) is the legislative enactment establishing eligibility to register to vote in Pennsylvania, and specifically excludes any person who has "been confined in a penal institution for a conviction of a felony within the last five years." This portion of the statute, however, was declared unconstitutional in *Mixon v. Pennsylvania*, 759 A.2d 442 (Pa.

Commw. Ct. 2000), *aff'd*, 566 Pa. 616 (2001). In *Mixon*, recently released felons who had not registered to vote before their incarceration challenged the Pennsylvania voter eligibility law, which prohibited felons from registering to vote for five years after release. *Id.* at 451. The unregistered felons argued that the law was irrational because the law required them to wait five years to register to vote, while released felons who had been registered to vote before incarceration were permitted to vote immediately upon their release. *Id.* The challenge alone demonstrates that these previously registered felons were not removed from voter rolls and required to re-register, or else they too would have been subject to the same five-year waiting period. The *Mixon* Court agreed that such a distinction was irrational and that if previously registered felons could vote upon release, then previously unregistered felons must be permitted to vote upon release as well. *Id.* ("[T]here is no rational basis to preclude the registration of those who have been incarcerated within the last five years and who had not been registered previously, when those who were legally registered prior to incarceration may vote upon their release."). The Court, however, upheld the definition of "qualified absentee electors," which specifically excludes those persons confined in a penal institution. *Id.* at 447; 450-51. The Supreme Court of Pennsylvania affirmed the decision in its entirety per curiam. *Mixon v. Pennsylvania*, 566 Pa. 616 (2001). Therefore, while it is clear that incarcerated felons are not qualified absentee electors, it is also clear that incarcerated felons are not removed from voter rolls in Pennsylvania on the basis of incarceration alone.[4]

Moreover, felons may vote immediately upon release. *Mixon*, 759 A.2d at 451. As a result, if an incarcerated felon were to be released before the polls close on November 8, 2016, that (now-released) felon should be permitted to vote in the upcoming Federal election under Pennsylvania law. However, if that individual were removed from the voter rolls, as Plaintiff alleges Federal law requires, then that individual would be unable to vote upon release. Instead, that individual would have to re-register and wait thirty days before being permitted vote. But that is not what it means to have the right restored *upon release*. *Mixon*, 759 A.2d at 456. Pennsylvania law "merely suspends the franchise for a defined period," it does not require that

---

[4] Although Pennsylvania does not remove incarcerated felons on the basis of their incarceration alone, the Court can imagine a scenario where an incarcerated felon with a lengthy term of imprisonment is incidentally removed by operation of a voter removal program under the NVRA. *See, e.g.,* 52 U.S.C. § 20507(d)(1)(B) (permitting removal of registrants who fail to respond to notice and have not appeared to vote for a specified period of time); 25 PA. CONS. STAT. ANN. § 1901(b)(2)(iii) (permitting removal of registrants who fail to respond to notice in accordance with NVRA).

these individuals be removed from voter rolls and declared ineligible to vote so that the right could not possibly be restored immediately upon release. *Id.* at 448, n.11.

Defendant relies on 25 PA. CONS. STAT. ANN.. § 1901(a), which codifies Pennsylvania's list maintenance procedures, to further clarify the eligibility of felons. (MTD at 14.) The Commonwealth of Pennsylvania provides for the removal of electors in four circumstances: (1) at the request of the elector, (2) upon the death of the elector, (3) upon confirmation the elector has moved to a residence outside the county (4) under a voter removal program as provided for under subsection (b), and in compliance with the NVRA of 1993. 25 PA. CONS. STAT. ANN. § 1901(a)(1)-(4). Subsection (b) then details methods by which registration may be cancelled in accordance with the NVRA, and does not include the removal of felons. Defendant argues that is because felons as a whole are not excluded from voting in Pennsylvania, it is only while a felon is incarcerated that the individual is unable to vote. (MTD at 15.) Therefore, rather than declare all felons ineligible to vote, refusing to permit incarcerated felons from voting absentee ensures that only voters qualified in the current election vote. (MTD at 15.)

Pennsylvania law "do[es] not completely disenfranchise the convicted felon, as is the case in fourteen of our sister states; it merely suspends the franchise for a defined period." *Mixon*, 759 A.2d at 449, n.11. As a result, incarcerated felons are not removed from voter rolls and required to re-register upon release. *Id.* at 451-52 (holding unconstitutional law permitting previously-registered felons to vote immediately upon release, while requiring previously-unregistered felons to wait five years). Instead, persons incarcerated for a felony are not qualified to vote by absentee ballot as a "qualified absentee elector." *Mixon*, 759 A.2d at 450. In light of the foregoing review of Pennsylvania law, it is clear that incarcerated felons are not ineligible voters. Therefore, while the plain language of HAVA § 21083(a)(4) requires a "reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters," that does not reach incarcerated felons in Pennsylvania. As a result, Plaintiff's claim under this subsection fails as a matter of law.

8. Because Federal Law Defers To State Law Definitions Regarding Eligibility Of Voters With Criminal Convictions, Pennsylvania's Eligibility Requirements Cannot Then Conflict With Federal Law

Plaintiff argues that, if the Court were to reach such a conclusion regarding Pennsylvania law, that Pennsylvania law would then be in conflict with Federal law and must be preempted. Plaintiff asserts that the NVRA "adds another category of ineligible registrants that must be subject to list maintenance procedures," but provides no statutory citations for this proposition. At this point, the Court has thoroughly reviewed each potentially applicable section of both the NVRA and HAVA, and has found no such requirement. In addition, neither statute defines who is an "eligible" voter. Instead, 52 U.S.C. § 20507(a)(3)(B) permits States to remove registrants due to criminal conviction or mental incapacity, "as provided by *State law*." Moreover, other sections of the NVRA recognize the wide array of state eligibility requirements by setting requirements for States that choose to have "no voter registration requirement for any voter." 52 U.S.C. 20507(a)(3)(A).

Furthermore, it is well-established that eligibility to vote with regard to felon disenfranchisement is an issue of State law. *See Lassiter v. Northampton Cty. Bd. of Elections*, 360 U.S. 45, 51 (1959) ("Residence requirements, age, previous criminal record are obvious examples indicating factors which a State may take into consideration in determining the qualifications of voters.") (internal citation omitted); *see also Richardson v. Ramirez*, 418 U.S. 24, 55 (1974) (finding constitutional California's disenfranchisement of felons). The Court agrees with Plaintiff that "[i]f a state deems that incarcerated felons are not eligible voters, then they should not be on the list of eligible voters." (Resp. at 17.) But Plaintiff is recognizing that the choice is up to the States. There can be no conflict with Federal law, when, as the Court previously addressed, Federal law does not define who is an eligible voter. Instead, Federal law defers to the States to decide who is an eligible voter. That is why some States are able to disenfranchise felons entirely while others choose not to do so at all. Once a particular Federal law defers to the States, State law will not be in conflict with that Federal law unless it is unconstitutional. There is no allegation that Pennsylvania's law is unconstitutional. Because Federal law does not define voter eligibility and instead relies on State law, which is not alleged

to be unconstitutional, that State law is not in conflict with Federal law. Because there is no conflict of laws, the Pennsylvania law cannot be preempted.[5]

  ii. <u>To The Extent Plaintiff Alleges A General Violation of List Maintenance Provisions, Count II Is Dismissed Without Prejudice For Factual Insufficiency</u>

  Count II of Plaintiff's Amended Complaint alleges that Defendant "failed to make reasonable efforts to conduct voter list maintenance programs, in violation of Section 8 of NVRA, 52 U.S.C. § 20507 and 52 U.S.C. § 21083(a)(2)(A)." (A.C. ¶ 29.) Defendant moves to dismiss Count II based on its assertion that failing to remove incarcerated felons from voter registration rolls is not a violation of state or federal law. (MTD at 12-13.) Defendant recognizes that Plaintiff brings suit based on a failure to make reasonable efforts to conduct voter list maintenance programs in violation of the NVRA and then narrows this claim to the removal of incarcerated felons more specifically. (MTD at 12-13.) Plaintiff responds that "maintenance of incarcerated felon registrations is only one part of ACRU's list maintenance claim" and that "it makes a general claim of failure to comply with the general list maintenance provisions of NVRA." (Resp. at 10 (citing A.C. ¶ 29).) In its Reply, Defendant argues that Plaintiff has failed to plead the requisite factual specificity as to this general claim. (Reply at 4, n.3.) The Court agrees that Plaintiff alleges a general claim of failure to comply with the list maintenance provisions in paragraph 29 of the Amended Complaint, however, Plaintiff cites to no facts to support this general claim.

  The factual allegations of Plaintiff's Amended Complaint focus on Defendant's failure to remove incarcerated felons. (A.C. ¶ 12-17, 19.) Plaintiff does not allege any factual allegations to support its claim that Defendant has violated the list maintenance provisions in any other manner and therefore the Amended Complaint lacks "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

---

[5] Defendant moves to dismiss for failure to join a necessary party under Rule 12(b)(7). (MTD at 17.) Defendant's motion is based on the argument that, if the Court were to afford the relief sought in Count II, it "would require that the Court rule that Pennsylvania requires each county to cancel the registration of incarcerated felons. That is contrary to established case law precedent and to the clear language of Pennsylvania's Statutes." (MTD at 17.) Because the Court finds that there is no conflict of law and will dismiss Count II under Rule 12(b)(6), disposing of the action will not impair or impede the Commonwealth's ability to protect interest. In addition, if the Commonwealth believed there is nonetheless a serious risk that its interest will be impeded, it could seek to intervene under Rule 24.

Therefore, to the extent that Plaintiff alleges a violation of the list maintenance provisions beyond Defendant's failure to remove incarcerated felons, Count II must be dismissed for factual insufficiency. Because it is possible that Plaintiff could reassert its claims with factual content, Plaintiff will be provided an opportunity to amend its complaint.

      iii.    <u>To The Extent Plaintiff Alleges A Violation of the NVRA by Failing to Communicate with Law Enforcement Regarding Identifying Felons, Count II is Dismissed with Prejudice for Legal Insufficiency</u>

Finally, Plaintiff alleges that Defendant is in noncompliance with the NVRA because it has "failed to communicate with state and local law enforcement agencies and U.S. Attorneys regarding identifying felons." (A.C. ¶ 19.) Specifically, Plaintiff alleges that Defendant receives "no information from any U.S. Attorney regarding the names of incarcerated felons, not [sic] do the Defendants [sic] request that information." (A.C. ¶ 16.) The NVRA directs that "[o]n the conviction of a person of a felony in a district court of the United States, the United States attorney shall give written notice of the conviction to the chief State election official designated under section 20509 of this title of the State of the person's residence." 52 U.S.C. 20507(g)(1). By its plain language, this puts the obligation on the United States attorney to provide the notice required by the statute. To place the onus on the State election officials would be to flip the burden created by the statute. The Court will not manipulate the plain language of the statute in such a manner.

**III.**   **CONCLUSION**

In light of the foregoing, Defendant's Motion to Dismiss will be GRANTED.

Insofar as Defendant Moves to Dismiss Count I of Plaintiff's Amended Complaint, which Plaintiff does not oppose, said Motion is GRANTED. Count I is DISMISSED WITH PREJUDICE.

Insofar as Defendant Moves to Dismiss Count II of Plaintiff's Amended Complaint under 12(b)(6), Defendant's Motion is GRANTED. To the extent Plaintiff alleges a violation of Federal law for failure to remove incarcerated felons from voter rolls and request information from the United States Attorney, Count II is DISMISSED WITH PREJUDICE. To the extent Plaintiff alleges a violation of Federal law for failure to comply with general list maintenance requirements, Count II is DISMISSED WITHOUT PREJUDICE. If Plaintiff chooses to file a second amended complaint, Plaintiff must do so within fourteen (14) days, no later than September 23, 2016.

An appropriate Order follows.

BY THE COURT:


/s/ C. Darnell Jones, II
C. DARNELL JONES, II      J.

20